B.D. PARKER, JR., Circuit Judge.
 

 Appellant Key Mechanical Inc. appeals from a consolidated judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, Judge), affirming orders of the Bankruptcy Court (Richard L. Bohanon,
 
 Judge)
 
 dismissing an involuntary petition against appellee BDC 56 LLC and denying a motion for reconsideration.
 

 Key is a construction company that performed heating and ventilation work at the Chambers Hotel in Manhattan. After a dispute over payment with BDC, the owner of the hotel, Key joined with DWF, Inc. and Mesta Construction, Inc., two other construction companies that claimed to be owed various amounts by BDC for work performed at the hotel, in filing an involuntary petition against BDC under Chapter 7 of the Bankruptcy Code.
 
 See
 
 11 U.S.C. § 303(b)(1) (1993).
 

 BDC contended that it was not insolvent, that differences existed with the petitioning creditors over the quality of their work and that the petition was simply an effort to- coerce payment of monies not due. BDC moved to dismiss, contending that the petitioning creditors’ claims were subject to bona fide disputes.
 
 See id.
 
 The Bankruptcy Court agreed and dismissed the petition. The petitioning creditors moved for reconsideration and the Bankruptcy Court denied the motion. They appealed both orders to the District Court, which affirmed. Key appealed. We affirm.
 

 BACKGROUND
 

 The Chambers Hotel is owned and managed by BDC. Starting in 1999, Key performed heating, ventilation, and air-conditioning (“HVAC”) work at the hotel under a contract with HRH Construction, which at the time was BDC’s construction manager. During construction, HRH suspended work and BDC assumed direct responsibility for the project. At that time, HRH’s contracts with Key and with other contractors working at the site were assigned to BDC.
 

 In late 2000, a dispute arose between Key and BDC. Key claimed that it had substantially performed and was owed $231,938 by BDC. BDC claimed that Key’s work was defective and incomplete and insisted that Key complete performance. BDC ultimately hired another contractor, Dyn-aire, to complete the work. Key demanded the contract balance, but BDC, citing added costs and damages resulting from Key’s breach, refused and threatened to recover any shortfall under Key’s performance bond.
 

 DWF installed wood flooring under a contract with HRH that, like Key’s, was subsequently assigned to BDC. In early 2001, a dispute arose between BDC and DWF over its flooring work at the hotel. BDC and DWF agreed on a “punch list” of
 
 *115
 
 outstanding items for DWF to remedy, but because of these and other unresolved issues, BDC withheld the contract balance. DWF claims to be owed $45,939.
 

 Mesta was a subcontractor of the tiling contractor Tveter Carpet Co., with whom BDC had contracted directly. Mesta alleged that it fully performed under its subcontract with Tveter, but that Tveter paid only $33,000 of the $84,674 due under the contract. Mesta therefore sought the balance of $51,674 from BDC through a mechanic’s lien.
 
 See
 
 N.Y. Lien Law § 3 (McKinney 1993).
 

 In May 2001, Key, DWF, and Mesta filed an involuntary bankruptcy petition against BDC alleging that it owed them $231,938, $45,939, and $51,674, respectively.
 
 See
 
 11 U.S.C. § 303(b)(1). Section 303 permits such a filing by three petitioning creditors whose unsecured claims aggregate at least $11,625 and are neither contingent as to liability nor subject to a “bona fide dispute.”
 
 See id.;
 
 11 U.S.C. § 104 (Supp.2002). In June 2001, six additional creditors sought to join the petition, asserting claims for plumbing materials, metal supplies, or other construction-related services.
 
 [1]
 
 At the time they sought to join, these six creditors held only secured claims arising from mechanic’s liens filed against the hotel.
 
 [2]
 

 BDC moved to dismiss the petition, pointing to the existence of a longstanding dispute with Key concerning its performance under the contract.
 
 See
 
 Fed. R. Bankr.P. 1011; Fed.R.Civ.P. 12(b)(1) & (6). BDC also contended that DWF’s right to payment had not yet arisen under its contract, and that its claims was therefore subject to a bona fide dispute. In addition, BDC claimed that Mesta lacked standing because: (1) it was a subcontractor of Tveter, a party with whom BDC had contracted directly, and, consequently, was not in privity with BDC, and (2) BDC had tendered complete payment to Tveter for services and materials provided by Mesta.
 
 See
 
 N.Y. Lien Law § 4(1) (“If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien .... ”). With respect to the six new petitioning creditors, BDC contended that none qualified because none held unsecured claims as required by § 303(c), and, in any event, all of their claims were subject to bona fide disputes.
 

 The Bankruptcy Court concluded that the claims of Key and DWF were subject to bona fide disputes and that Mesta lacked standing. The court saw no need for an evidentiary hearing, concluding that the documentary evidence supported
 
 *116
 
 BDC’s claim of a preexisting dispute with Key, and that, because the contractual prerequisites to DWF’s payment had not been satisfied, its claim was also subject to a bona fide dispute. The court noted that privity between BDC and Mesta did not exist and determined that “Mesta lack[ed] standing to pursue its claim against BDC as a petitioning creditor ... or, at a minimum, there is a bona fide dispute concerning whether or not BDC owes anything to Mesta.” (Order, July 2, 2001, at 4.) Finally, the Bankruptcy Court concluded that the six additional petitioning creditors did not qualify because their claims were secured. The court treated BDC’s motion as one for summary judgment, granted it, and dismissed the petition.
 

 The petitioning creditors moved for reconsideration and, in support, offered the contract between HRH and BDC, related documents, and additional affidavits. The Bankruptcy Court denied the motion, finding that the petitioning creditors had not “presented any new evidence that is admissible, not already considered by the Court[,] or material to the outcome.” (Order Denying Petitioning Creditors’ Mot. to Reconsider the Dismissal of the Involuntary Pet., Oct. 12, 2001, at 3.) The court also found that the petitioning creditors had not shown the existence of “extraordinary circumstances or extreme hardship” justifying reconsideration.
 
 (Id.
 
 at 5.)
 

 The petitioning creditors appealed both orders to the District Court, which, reviewing for clear error, affirmed the Bankruptcy Court’s conclusion that the claims of Key and DWF were subject to bona fide disputes.
 
 Key Mechanical Inc. v. BDC 56 LLC.,
 
 No. 01 Civ. 10169(RWS), 2002 WL 449856, at *3-4 (S.D.N.Y. Mar.22, 2002) (“Key I”). With respect to Mesta, however, the District Court found that genuine issues of material fact existed as to whether BDC had paid Tveter in full for the work done by Mesta, precluding a finding that Mesta lacked standing.
 
 Id.
 
 at *5.
 

 The District Court affirmed the Bankruptcy Court’s holding that the six additional petitioning creditors were ineligible because their claims were secured.
 
 Id.
 
 at *5-6. While the court found limited authority for the proposition that the six creditors could have waived all or a portion of their secured claims in order to qualify under § 303(c),
 
 see CC Britain Equities, L.L.C. v. Allen-Main Assocs. Ltd. P’ship (In re Allen-Main
 
 Assocs.
 
 Ltd. P’ship),
 
 223 B.R. 59, 61 (1998), it found dispositive the fact that none had actually done so before the petition was dismissed.
 
 Key I,
 
 2002 WL 449856, at *6. Finding fewer than three eligible petitioning creditors, the District Court affirmed the dismissal of the involuntary petition.
 
 See
 
 11 U.S.C. § 303(b)(1). In a separate opinion, the District Court held that the Bankruptcy Court had not abused its discretion in denying the motion for reconsideration.
 
 Key Mechanical Inc. v. BDC 56 LLC.,
 
 No. 01 Civ. 10173(RWS), 2002 WL 467664, at *4 (S.D.N.Y. Mar.26, 2002) (“Key II”). Following the entry of judgment, Key appealed.
 

 DISCUSSION
 

 On appeal, Key contests the Bankruptcy Court’s finding that bona fide disputes existed and faults it for failing to hold an evidentiary hearing. Key also contends that the District Court used an incorrect standard — clearly erroneous as opposed to de novo — in reviewing the Bankruptcy Court’s order of dismissal. Our review of a judgment of a district court sitting as an appellate court on bankruptcy matters is plenary.
 
 See Mazzeo v. Lenhart (In re Mazzeo),
 
 167 F.3d 139, 142 (2d Cir.1999). We independently review the factual findings and legal conclusions of the bankruptcy court.
 
 Id.
 
 “On an appeal from an order
 
 *117
 
 granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), we review the district court’s factual findings for clear error and its legal conclusions de novo.”
 
 Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,
 
 215 F.3d 247, 249 (2d Cir.2000) (per curiam).
 

 As explained more fully below, a bankruptcy court’s determination that a petitioning creditor’s claim is the subject of a bona fide dispute will entail either a factual finding, a legal conclusion, or a mixed question of fact and law, depending on the nature of the dispute. The standard of review on appeal, therefore, depends on the nature of the determination being reviewed. Here, the Bankruptcy Court dismissed the involuntary petition because it found that the claims of at least two of the petitioning creditors were subject to bona fide disputes. Our plenary review persuades us that the Bankruptcy Court properly dismissed the petition.
 

 I. Bona Fide Disputes Under 11 U.S.C. § 303(b)
 

 Section 303(b) of the Bankruptcy Code provides:
 

 An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
 

 (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the
 
 subject of a bona fide dispute,
 
 or an indenture trustee representing such holder, if such claims aggregate at least [$11,-625] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.
 

 11 U.S.C. § 303(b) (emphasis added);
 
 see also
 
 11 U.S.C. § 104. As originally enacted, § 303 did not exclude creditors’ claims that were the subject of bona fide disputes. The language was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 426(b), 98 Stat. 333, 392 (1984).
 
 See
 
 11 U.S.C.A. § 303(b)(1) (historical and statutory notes).
 

 The Bankruptcy Code does not define “bona fide dispute.” It has been left to courts to give content to the term, although our Circuit has not spoken on the issue. Most circuits have adopted an objective test similar to that first articulated by
 
 In re Lough,
 
 57 B.R. 993, 997 (Bankr.E.D.Mich.1986), which considers whether there is either a genuine issue of material fact that bears upon the debtor’s liability or a meritorious contention as to the application of law to undisputed facts.
 
 See Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.),
 
 277 F.3d 1057, 1064-65 (9th Cir.2002);
 
 Subway Equip. Leasing Corp. v. Sims (In re Sims),
 
 994 F.2d 210, 220-21 (5th Cir.1993);
 
 Rimell v. Mark Twain Bank (In re Rimell),
 
 946 F.2d 1363, 1365 (8th Cir.1991);
 
 B.D.W. Assocs. Inc. v. Busy Beaver Bldg. Ctrs., Inc.,
 
 865 F.2d 65, 66-67 (3d Cir.1989);
 
 Bartmann v. Maverick Tube Corp.,
 
 853 F.2d 1540, 1543-44 (10th Cir.1988).
 

 The Seventh Circuit adopted a formulation of the objective test as follows: “[T]he bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt.”
 
 In re Busick,
 
 831 F.2d 745, 750 (7th Cir.1987). The reasoning behind the objective standard is that “[t]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the
 
 *118
 
 stigma of bankruptcy.”
 
 Lough,
 
 57 B.R. at 997.
 

 We now adopt the Seventh Circuit’s objective test, as well as the burden-shifting framework developed by other courts for its application, which requires, first, that the petitioning creditor establish a prima facie case that no bona fide dispute exists. Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute.
 
 See Sims,
 
 994 F.2d at 221;
 
 Rimell,
 
 946 F.2d at 1365. “Because the standard is objective, neither the debt- or’s subjective intent nor his subjective belief is sufficient to meet this burden,” and “[tjhe court’s objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute.”
 
 Rimell,
 
 946 F.2d at 1365.
 

 II. Standard of Review
 

 The parties dispute the standard of review applicable to a bankruptcy court’s determination that a claim is subject to a bona fide dispute. Not surprisingly, Key urges de novo review, while BDC insists we review for clear error. For the reasons that follow, we decline to apply either standard universally.
 
 [3]
 

 Bankruptcy courts in this Circuit have construed the requirement that a petitioning creditor’s claim not be subject to a bona fide dispute as “both an element of the condition upon which a controverted order for relief may be entered and a necessary prerequisite for the bankruptcy court’s jurisdiction.”
 
 In re Elsa Designs, Ltd.,
 
 155 B.R. 859, 863 (Bankr.S.D.N.Y.1993);
 
 see also In re Onyx Telecomm., Ltd.,
 
 60 B.R. 492, 496 (Bankr.S.D.N.Y.1985). At least one circuit, however, has held that the requirement that a petitioning creditor’s claim not be subject to a bona fide dispute is not jurisdictional, but is “an element that must be established to sustain an involuntary proceeding.”
 
 Rubin v. Belo Broad. Corp. (In re Rubin),
 
 769 F.2d 611, 614-15
 
 &
 
 n. 3 (9th Cir.1985).
 
 [4]
 

 We believe the more sound view is that the requirement is subject matter jurisdictional, and now so hold. Whether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings. One of the requirements to bringing such a petition is that the petitioning creditors’ claims are free from bona fide dispute. Any creditor wishing to invoke the bankruptcy court’s jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement. Otherwise, creditors could, on the basis of relatively untested claims, haul a
 
 *119
 
 solvent debtor with whom they have legitimate disputes into bankruptcy court and force it to defend an involuntary proceeding while the bankruptcy court leaves for a later merits determination whether the debtor is even properly before it.
 

 As is the case with determinations of subject matter jurisdiction, the applicable standard of review depends on the nature of a lower court’s decision. Whether a claim is subject to a bona fide dispute will sometimes be a factual question, such as where conflicting affidavits or documentary evidence raise an issue as to whether a creditor has been paid or is, in fact, owed anything. In other circumstances, the facts may be uneontested and the question may depend solely on the bankruptcy court’s interpretation of a contract or applicable law. To the extent a bankruptcy court’s decision that a claim is subject to a bona fide dispute involves findings of fact, we review it for clear error. To the extent it involves conclusions of law, we review it de novo.
 
 See McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.),
 
 59 F.3d 9, 11 (2d Cir.1995) (“When reviewing a district court’s determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions
 
 de novo.”).
 

 Key contends that the Bankruptcy Court’s failure to hold an evidentiary hearing requires de novo review of its order. We disagree. The nature of a bankruptcy court’s findings is not altered by whether it holds an evidentiary hearing. If a bankruptcy court resolves a factual issue by reference to documentary evidence and affidavits alone, this factual finding is not reviewed de novo merely because a party believes that the court might have benefitted from hearing witnesses’ testimony.
 
 [5]
 

 Key also argues, somewhat relatedly, that the court’s failure to hold an eviden-tiary hearing demonstrates that it treated BDC’s motion as one for summary judgment, requiring de novo review. There is some indication in the record, aside from the absence of an evidentiary hearing, that the Bankruptcy Court indeed purported to treat BDC’s motion — made under Rules 12(b)(1) and 12(b)(6) — as one for summary judgment.
 
 (See
 
 Transcript of Oral Argument on Dismissal Mot., June 22, 2001, at 4-5; Order, July 2, 2001, at 1-3.) The court’s order, however, does not reflect that it undertook a summary judgment analysis. Rather, the court made both factual findings and legal conclusions concerning the existence of bona fide disputes, and, based on these findings, dismissed the petition. Such findings were appropriate under Rule 12(b)(1), but not under Rule 56. Ultimately, we are not bound by the court’s characterization of its ruling. Because the Bankruptcy Court dismissed the petition because it essentially determined that it lacked subject matter jurisdiction, we will review its factual findings and legal conclusions as discussed above.
 

 III. Petitioning Creditors’ Claims and BDC’s Motion to Dismiss
 

 Section 303 requires that a petition for involuntary bankruptcy be brought by at
 
 *120
 
 least three qualifying creditors.
 
 See
 
 11 U.S.C. § 303(b)(1). Consequently, if the six additional petitioners were correctly dismissed and if the claim of any one of the three original petitioners was correctly held to be subject to a bona fide dispute, we must affirm. Our review of the record convinced us, however, that the claims of all three original petitioners were correctly adjudged to be subject to bona fide disputes.
 

 A. Key
 

 Key claimed that it was owed $231,938 for HVAC work. In seeking dismissal, BDC introduced documentary evidence of a preexisting dispute concerning Key’s performance. Specifically, the record contained several letters from BDC to Key, beginning in January 2001, notifying Key that it was in default and demanding performance. The letters also warned Key that if it failed to complete the work, BDC would hire another contractor and back-charge Key for any shortfall or other damages. Key disputed BDC’s claim that it was current on its payments and blamed faulty electrical work performed by other contractors for the problems with the HVAC work. BDC ultimately hired another contractor, Dyn-aire, to complete the work under Key’s contract. Key claims that even after accounting for any offset for these costs, it is still owed approximately $35,000, but there has been no determination that this amount is, in fact, owed. The Bankruptcy Court found that Key’s claim was subject to a bona fide dispute.
 

 On appeal, the District Court agreed and rejected Key’s contention that at least $35,183 of its claim was undisputed and that, as to that amount, the claim should proceed. The court found that “the numbers used to reach the $35,182.66 figure appear to be taken from correspondence between Key and BDC, and do not factor in all potential direct and indirect damages that BDC faced as a result of Key’s failure to complete its work.”
 
 Key I,
 
 2002 WL 449856, at *4.
 

 Key argues that the District Court erred in treating “BDC’s counterclaims as a defense to the total claim rather than a diminution of the amount.” (Br. for Appellant at 18.) BDC responds that “[t]he potential contractual damages arising from Key’s default ... are not limited to counterclaims, but rather, ... go to the determination as to the existence of Key’s claim.” (Br. for Appellee at 21.) BDC cites the District Court’s finding that Key’s numbers do not consider “all potential direct and indirect damages” caused by Key’s breach, suggesting that its costs and damages will exceed any amount Key could recover.
 

 While it is clear that a claim is not subject to a bona fide dispute simply because the debtor has an unrelated counterclaim against a petitioning creditor, where a claim for offset arises out of the same transaction and is directly related to the creditor’s underlying claim, and, if valid, could serve as a complete defense to that claim, a bona fide dispute exists.
 
 See, e.g., Chi. Title Ins. Co. v. Seko Inv., Inc. (In re Seko Inv., Inc.),
 
 156 F.3d 1005, 1008-09 (9th Cir.1998). Here, BDC alleges that Key’s default caused undetermined damages likely to exceed any amount Key could recover. Since BDC’s claim for offset arises out of the same transaction and relates to Key’s claim, and, if valid, would extinguish the claim, the Bankruptcy Court correctly concluded that a bona fide dispute exists.
 

 B. DWF
 

 BDC contended that DWF’s claim was subject to a bona fide dispute because contractual prerequisites to payment had
 
 *121
 
 not been satisfied. BDC relied on section 10.1(f) of the contract between DWF and HRH, which BDC subsequently assumed. That section required that DWF first fully pursue a lien action against the hotel before it could seek to recover directly from BDC:
 

 Except to the extent that the Construction Manager [HRH] has received funds for payment to Contractor [DWF], which it has improperly not paid to Contractor, Contractor understands that it shall have claim against Construction Manager for payment on account of the Contract Price for the Project, or any other sums that may be due and payable hereunder,
 
 only
 
 to the extent that this Contractor has fully pursued its lien rights against the Project for which a claim of non-payment is made under the lien law of the State of New York, including a foreclosure action against same (the
 
 “Lien Action
 
 ”), and then only to the extent that, and for the amount that, Contractor’s ultimate recovery from the Owner [BDC], by virtue of the Lien Action, is less than the proper unpaid amount due this Contractor. The Contractor hereby expressly waives any and all claims with respect to any unpaid sums against Construction Manager under this Contract, unless and until the Lien Action is fully completed.
 

 (Contract between HRH and DWF, section 10.1(f) (emphases in original).)
 

 The Bankruptcy Court, relying on this provision, concluded that DWF's right to payment from BDC had not yet arisen and, therefore, that its claim was subject to a bona fide dispute. The petitioning creditors argued that BDC could not invoke § 10.1(f) because the contract had been drafted with only DWF and HRH in mind. The section, the creditors claimed, was intended to protect the construction manager, HRH, against a claim for payment by DWF in the event BDC failed to pay HRH for work done by DWF. If that occurred, DWF would be required first to proceed directly against the property rather than against HRH. The petitioning creditors claimed that even though BDC assumed the contract, it should not be permitted to wear two hats — that of property owner and that of construction manager — and that it would “pervert the very meaning of paragraph 10.1(f)” to require DWF to pursue a lien action before pursuing any other action against BDC. (Appellants’ Br., Appeal of Order of the Bankruptcy Court dated July 2, 2001, at 18.) The District Court rejected this contention: “Appellants cite no authority for the proposition that a party who assumes the rights and obligations under a contract can be barred from enjoying some of those rights because of the original intention of the drafters without any direct contractual language to that effect.”
 
 Key I,
 
 2002 WL 449856, at *4.
 

 We agree with the District Court. When BDC assumed the DWF-HRH contract, it succeeded to HRH’s rights under the contract and was entitled to require DWF to pursue a lien action against the hotel before seeking payment directly from BDC. That BDC is both the construction manager under the contract and the property owner does not change this result.
 
 See, e.g., Tanbro Fabrics Corp. v. Deering Milliken, Inc.,
 
 35 A.D.2d 469, 471, 318 N.Y.S.2d 764, 767 ,
 
 aff'd,
 
 29 N.Y.2d 690, 325 N.Y.S.2d 419, 274 N.E.2d 751 (1971). Since DWF failed fully to pursue a lien action, its right to payment had not matured and, as the District Court correctly found, its claim was subject to a bona fide dispute.
 

 C. Mesta
 

 Mesta was a tiling subcontractor of Tveter. Contending that it was never
 
 *122
 
 fully paid by Tveter, Mesta sought, through a mechanic’s hen, to collect the contract balance from BDC. A mechanic’s hen permits a subcontractor to assert a hen against the property, regardless of whether privity with the owner exists.
 
 See
 
 N.Y. Lien Law § 3;
 
 Rure Assocs., Inc. v. DiNardi Constr. Corp.,
 
 917 F.2d 1332, 1335-36 (2d Cir.1990). A subcontractor, however, may only assert a hen to the extent that there are funds due and owing to the general contractor by the property owner under the principal contract.
 
 See
 
 N.Y. Lien Law § 4(1) (hen extends only to amount earned and unpaid on general contract at the time of the filing of the hen);
 
 Rure Assocs.,
 
 917 F.2d at 1335-36. The evidence before the Bankruptcy Court indicated that BDC had made some payments to Tveter, but that BDC may still have owed Tveter $9,846, which would have permitted Mesta to proceed as a lien- or against BDC.
 

 The Bankruptcy Court found that Mesta lacked standing against BDC, and, alternatively, that Mesta’s claim was subject to a bona fide dispute. The District Court, however, found that the conflicting evidence as to whether BDC owed additional amounts to Tveter raised a genuine issue of material fact as to whether Mesta had standing as a lienor, and that it was therefore improper for the Bankruptcy Court to have found that Mesta lacked standing. But because we conclude that there is an “objective basis for a factual dispute” as to whether BDC paid Tveter in full — and thus, a question as to whether Mesta can properly proceed against BDC as a lien- or — Mesta’s claim is subject to a bona fide dispute, as the Bankruptcy Court correctly concluded.
 

 D. The Six Additional Petitioning Creditors
 

 The six additional creditors who sought to join the petition held secured claims in the form of mechanic’s liens against the hotel. The Bankruptcy Court concluded that the six were ineligible to join as petitioning creditors under 11 U.S.C. § 303(c) because none held unsecured claims. Section 303(c) provides:
 

 After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
 

 The statute plainly requires that joining creditors hold unsecured claims. As the District Court noted, while several of these creditors may have indicated a willingness to waive some or all of their security should Key or Mesta be found to be ineligible as petitioning creditors, none had actually done so by the time the Bankruptcy Court resolved BDC’s motion, and § 303(c) requires that petitioning creditors join “before the case is dismissed or relief is ordered.” 11 U.S.C. 303(c). Accordingly, we conclude that the Bankruptcy Court correctly held that these additional creditors were ineligible, and it properly dismissed the petition.
 

 IV. Motion for Reconsideration
 

 On their motion for reconsideration, the petitioning creditors sought to admit the contract between BDC and HRH, as well as affidavits from HRH and from two new putative joining creditors. The petitioning creditors contended that these documents would “clarifly] the relationship between the Debtor and the contractors” and “negate[ ] the Debtor’s allegation that a
 
 bona fide
 
 dispute exists between Key and the Debtor.” (Mem. of Law in Support of
 
 *123
 
 Mot. for Recons, of Order Dated July 2, 2001, at 4.)
 

 Federal Rules of Bankruptcy Procedure 9023 and 9024, under which the petitioning creditors moved for reconsideration, incorporate Federal Rules of Civil Procedure 59 and 60, respectively. Generally, motions for reconsideration are not granted unless “the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.”
 
 Shrader v. CSX Transp., Inc.,
 
 70 F.3d 255, 257 (2d Cir.1995).
 

 The denial of a motion for reconsideration is reviewed for an abuse of discretion.
 
 Devlin v. Transp. Communications Int’l Union,
 
 175 F.3d 121, 132 (2d Cir.1999);
 
 McCarthy v. Manson,
 
 714 F.2d 234, 237 (2d Cir.1983). The petitioning creditors presented to the Bankruptcy Court neither factual matters nor controlling precedent it had overlooked that would have changed its decision. Consequently, the court did not abuse its discretion in denying the motion for reconsideration.
 

 CONCLUSION
 

 For the foregoing reasons, we Atfiem the judgment of the District Court.
 

 [1]
 

 . They were: Gilmour Supply Co. Inc., North Shore Plumbing Supply Co., Inc., Okin-Wallack Corp., Skyline Steel Corporation, Terra Firma Construction Management & General Contracting, LLC, and Webster Plumbing Supply Inc. Gilmour, North Shore, Okin-Wallack, and Webster were subcontractors of Kaplan-Breslaw-Ash Inc., a plumbing contractor with whom BDC had contracted directly, and Terra Firma was a subcontractor of Caspi Development Co. Inc. and provided pre-construction planning services to BDC. Skyline was a subcontractor of HRH, BDC's former construction manager, and provided miscellaneous metals pursuant to a contract with HRH that, like DWF's, was assigned to BDC when BDC assumed responsibility for the project.
 

 [2]
 

 . Although Skyline was in privity with BDC by virtue of BDC’s assumption of Skyline’s contract with HRH, a contractual provision required Skyline to fully pursue its lien rights under New York law against the Chambers Hotel before its right to payment from BDC could arise. At the time it sought to join the involuntary petition, Skyline held only a secured claim arising from its mechanic’s lien against the hotel.
 

 [3]
 

 . Other circuits that have adopted the objective test have held that the clearly erroneous standard of review applies on appeal of a bankruptcy court's determination that a bona fide dispute exists.
 
 See, e.g., Vortex,
 
 277 F.3d at 1064 (“We agree with the other circuits that have held that this is essentially a factual inquiry and adopt a clearly erroneous standard of review.”);
 
 Rimell,
 
 946 F.2d at 1365 ("[B]ecause the determination as to whether a dispute is bona fide will often depend ... upon an assessment of witnesses’ credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous.");
 
 Sims,
 
 994 F.2d at 221. To the extent that
 
 Vortex, Rimell,
 
 and
 
 Sims
 
 hold that the clearly erroneous standard of review always applies, we decline to follow them.
 

 [4]
 

 .
 
 See also
 
 1
 
 Norton Bankruptcy Law and Practice 2d
 
 § 21:3 (2d ed. 1994) (“[T]he undisputed claim requirement is not jurisdictional, but goes to the merits. If the point is contested, petitioners cannot prevail unless they show that their claims are not subject to bona fide dispute, but the Bankruptcy Court is not without jurisdiction prior to the determination.").
 

 [5]
 

 . Key also claims that the Bankruptcy Court erred by not holding an evidentiary hearing. Where, as here, the documentary evidence establishes the existence of a bona fide dispute, however, a bankruptcy court is not obligated to hold an evidentiary hearing. There may be occasions when an evidentiary hearing would be helpful, but whether to hold one is within the court's discretion.
 
 Cf. Filetech
 
 S.A. v.
 
 France Telecom S.A.,
 
 304 F.3d 180, 183 (2d Cir.2002);
 
 Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi,
 
 215 F.3d 247, 253 (2d Cir.2000) (per curiam). Here, the Bankruptcy Court's decision not to hold a hearing involved no abuse of discretion.