UNITED STATES of America

v.

**Michael YANNOTTI, Defendant.**

No. 04 CR 690(SAS).

United States District Court,
S.D. New York.

July 24, 2006.

**94.** *See id.* ¶ 27.

**95.** *See id.* ¶ 23.

Diarmuid White, White & White, New York City, for Defendant.

Victor L. Hou, Miriam Rocah, Assistant United States Attorneys, New York City, for the Government.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

By letters dated March 20, 2006 and May 8, 2006,[1] defendant Michael Yannotti moves for reconsideration of this Court's December 30, 2005 Opinion and Order ("Opinion") denying his motion for a judgment of acquittal on Count Two of Indictment S1 04 CR 690(SAS) (the "Indictment"). Alternatively, in the event Yannotti's motion for reconsideration is denied, he moves for bail pending appeal. For the following reasons, Yannotti's motion for reconsideration is denied as is his motion for bail pending appeal.

### A. The Verdict

On September 20, 2005, the jury unanimously found proven one of four predicate acts with which Yannotti was charged—conspiracy to make extortionate extensions of credit and collect extensions of credit through extortionate means in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO").

---

1. These letters are from Diarmuid White, Yannotti's trial attorney.

This was the fourth racketeering act (Racketeering Act # 7) in support of the RICO Substantive charge (Count One). The jury was unable to reach a verdict on Count One, however, having found the second and third predicate acts[2] not proven and having deadlocked on the first predicate act.[3] Yannotti was convicted of Count Two, RICO Conspiracy.[4]

## B. The Rule 29 Motion

Yannotti then moved for a judgment of acquittal on both RICO counts pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). In an Opinion and Order dated December 30, 2005 (the "Opinion"), Yannotti's motion was granted as to Count One[5] but denied as to Count Two.[6] Yannotti's argument in support of a judgment of acquittal on the RICO Conspiracy count can be summarized as follows:

Yannotti argues that while the charged *enterprise* is the Gambino Organized Crime Family, the charged *conspiracy* is the agreement to participate in the conduct of the affairs of that enterprise through a pattern of racketeering activi-

ty, and that the enterprise and the conspiracy cannot be the same. Yannotti further argues that it is not enough for the Government to establish that the defendant continued to act *as a member of the alleged organized crime family* in order to satisfy the statute of limitations; the Government must establish that the defendant agreed to participate in the enterprise's affairs through the particular pattern of racketeering activity charged in the [I]ndictment. Finally, Yannotti concludes that if the evidence shows that he neither committed a charged predicate act within the five-year limitations period nor that he agreed to participate in the enterprise's affairs through the particular pattern of racketeering activity charged in the Indictment during that period, then the statute of limitations is not satisfied as to the RICO conspiracy count as well as the RICO substantive count.[7]

Despite the Government's failure to prove that the loansharking conspiracies charged as predicate acts in the RICO Substantive charge continued into the limi-

---

2. The second predicate act charged Yannotti with conspiracy to murder and the murder of Robert Arena as well as the murder of Thomas Maranga. The third predicate act charged Yannotti with the attempted murder of Robert Tarantola.

3. The first predicate act charged Yannotti with conspiracy to kidnap, kidnaping, and the attempted murder of Curtis Sliwa, a radio talk show host who publicly criticized John Gotti, Sr., the father of co-defendant John A. Gotti, Jr. ("Gotti").

4. Count Two charged that defendants conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, the Gambino Organized Crime Family, through a pattern of racketeering activity set forth in paragraphs fourteen through twenty-four of the Indictment as Racketeering Acts One through Eleven. *See* Indictment ¶ 26.

5. *See United States v. Yannotti*, 415 F.Supp.2d 280, 291 (S.D.N.Y.2005) ("There is simply no evidence in this record that any of the alleged co-conspirators engaged in loansharking during the limitations period. I therefore conclude that no reasonable jury could have found that Yannotti participated in that conspiracy after July 21, 1999. Count One of the Indictment is therefore dismissed pursuant to Rule 29.").

6. *See id.* at 292 ("Viewed in the light most favorable to the Government, the Government proved beyond any reasonable doubt that the activities of the enterprise [the Gambino Organized Crime Family], through the pattern of racketeering activity charged in the Indictment, continued well into the limitations period.").

7. *Yannotti*, 415 F.Supp.2d at 291–92 (quotations, citations and footnotes omitted).

tations period,[8] "there was substantial evidence that the conspiracy to commit extortion in the construction industry and the conspiracy to commit securities fraud extended well into the limitations period."[9] Having failed to withdraw from the overarching conspiracy to participate in the affairs of the Gambino Crime Family, Yannotti was held responsible for these activities even though he was not charged with these predicate acts.[10]

### C. The Motion for Reconsideration

Yannotti now moves for reconsideration of his Rule 29 motion with regard to Count Two of the Indictment. In support of reconsideration, Yannotti alleges that this Court overlooked two Second Circuit cases, *United States v. Labat*[11] and *United States v. Bruno*,[12] which, he argues, invalidate this Court's decision upholding the RICO Conspiracy conviction. Despite the prohibition on repetition, Yannotti restates the following argument, first presented in his Rule 29 motion:

> [T]here was no evidence here that *Yannotti* was part of any RICO conspiracy whose objective was to conduct the affairs of an enterprise through a pattern of racketeering activity *that included the securities fraud conspiracy and con-*

*struction industry extortion conspiracy* alleged to have been committed by codefendants, even if he had once been part of a narrower RICO conspiracy, *e.g.*, one relating to loansharking. Consequently, those racketeering acts could not have satisfied the statute of limitations as to Yannotti.

In sum, . . . if the evidence shows, as it does, that Yannotti neither committed a charged predicate act within the five-year limitations period nor was part of an agreement during that period to participate in the enterprise's affairs through the particular pattern of racketeering activity charged in this indictment, then the statute of limitations was not satisfied as to the RICO conspiracy count as well as the RICO substantive count.[13]

## II. LEGAL STANDARD

"The standard to be applied in deciding reconsideration motions in criminal cases has not been clearly established. Neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsideration motions."[14] However, motions for reconsideration in criminal cases have traditionally been allowed within the Second Circuit.[15] In de-

---

8. *See id.* at 292 ("There was more than sufficient evidence at trial to support the finding that the activities of the Gambino Organized Crime Family continued into the limitations period and that Yannotti was a member of that conspiracy.").

9. *Id.*

10. *See id.*

11. 905 F.2d 18 (2d Cir.1990).

12. 383 F.3d 65 (2d Cir.2004).

13. 5/8/06 Letter from Diarmuid White to the Court at 8 (emphasis in original).

14. *United States v. Mottley*, No. 03 CR 303, 2003 WL 22083420, at *1 (S.D.N.Y. Sept. 9, 2003).

15. *See United States v. Clark*, 984 F.2d 31, 33 (2d Cir.1993) ("In *Healy* [376 U.S. 75, 84 S.Ct. 553 (1964)] and *Dieter* [429 U.S. 6, 97 S.Ct. 18 (1976)] the Supreme Court permitted the Government to seek reconsideration of a district court ruling dismissing an indictment in a criminal case despite the absence of any provision explicitly authorizing such reconsideration."). In so doing, the Supreme Court relied upon " 'traditional and virtually unquestioned practice.' " *Dieter*, 429 U.S. at 8 n. 3, 97 S.Ct. 18 (quoting *Healy*, 376 U.S. at 79, 84 S.Ct. 553).

ciding such motions, district courts have applied the standard found in Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3").[16] Accordingly, Local Rule 6.3 will be applied in deciding the instant motion.[17]

■■■■ The purpose of Local Rule 6.3 is to " 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.' "[18] Accordingly, a motion for reconsideration under Local Rule 6.3 will generally be denied unless " 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' "[19] Local Rule 6.3 is " 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.' "[20] The decision whether to grant or deny a motion for reconsideration is within the district court's sound discretion.[21]

## III. DISCUSSION

### A. Timeliness

"Local Rule 6.3 may have been promulgated with the intention that its application be limited to civil cases."[22] Nonetheless, "even if Local Rule 6.3 is not applicable to criminal cases ... the standard for reconsideration underlying Rule 6.3 should apply to criminal cases."[23] Under Local Rule 6.3, a motion for reconsideration "shall be served within ten (10) days after the entry of the court's determination of the original motion." The purpose of this ten-day window period is to ensure some

---

16. *See, e.g., United States v. Delvi*, No. S12 01 CR 74, 2004 WL 235211 (S.D.N.Y. Feb. 6, 2004); *United States v. Greenfield*, No. 01 CR 401, 2001 WL 1230538, at *1 (S.D.N.Y. Oct. 16, 2001) (applying Local Rule 6.3 standard in the interests of justice).

17. Local Rule 6.3, Motions for Reconsideration or Re-argument, provides, in pertinent part, as follows:
    A notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion, or, in the case of a court order resulting in a judgment, within ten (10) days after the entry of the judgment. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.
    U.S. Dist. Ct. Rules S. & E.D.N.Y., Civil Rule 6.3.

18. *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988)).

19. *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)).

20. *Hammer v. First UNUM Life Ins. Co.*, No. 01 Civ. 9307, 2005 WL 525445, at *2 (S.D.N.Y. Mar. 7, 2005) (quoting *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)). *See also Koehler v. Bank of Bermuda Ltd.*, No. M18–302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (stating that "a motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion"); *Pannonia Farms, Inc. v. USA Cable*, No. 03 Civ. 7841, 2004 WL 1794504, at *3 (S.D.N.Y. Aug. 10, 2004) (reconsideration "is not occasion for a party to craft new and previously untested legal theories").

21. *See Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004).

22. *Delvi*, 2004 WL 235211, at *1, n. 2.

23. *Id.*

measure of finality, an interest that underlies Local Rule 6.3.[24]

Although Yannotti's Rule 29 motion was decided on December 30, 2005, his motion for reconsideration is dated March 20, 2006, almost three months later. Yannotti did not cite any newly-decided cases in support of his motion nor did he offer a credible reason for his late filing. In fact, Yannotti provided no excuse for the delay but simply stated, conclusively, that "[t]his motion for reconsideration is not untimely, as no time limit for such motions is prescribed by rule."[25] While this may be true technically, if Local Rule 6.3 is indeed applicable to criminal cases, by default or otherwise, the entire Rule is applicable, including its time limit for filing. Yannotti's motion for reconsideration is therefore untimely and can be dismissed on this basis alone. I will, however, address the merits of Yannotti's motion, if only to clarify my earlier Opinion.

## B. Cases in Support of Reconsideration

### 1. *Labat*

■ Yannotti takes issue with this Court's citation to *Pinkerton v. United States*[26] for the proposition that "[a] defendant is liable for the acts of his co-conspirators if the acts were taken in furtherance of the conspiracy and were a reasonably foreseeable consequence of the conspiratorial agreement."[27] Yannotti correctly points out that the *Pinkerton* theory of liability is not available where the jury has not been instructed on that theory.[28] However, Yannotti ignores the preceding language in *Labat* which states:

> Under [the *Pinkerton*] theory, a coconspirator who does not directly commit *a substantive offense* may nonetheless be held liable for *that offense* if it was committed by another coconspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement.[29]

The issue in *Labat* was the application of principles of conspiracy law to uphold a guilty verdict against a defendant for a *substantive offense* (cocaine possession) when the jury was never instructed as to such an expanded theory of liability. With respect to the RICO Conspiracy charged in Count Two, no *Pinkerton* jury charge was required to hold Yannotti responsible for the acts of his co-conspirators in furtherance of that conspiracy. That is a basic principle of conspiracy law.[30] As the record reflects, the jury was charged extensively about the law of conspiracy permitting it to consider, as part of the charged conspiracy, acts committed by coconspirators, regardless of whether Yannotti committed or agreed to commit such

---

24. *See Carolco Pictures*, 700 F.Supp. at 170.

25. 3/20/06 Letter from Diarmuid White to the Court, at 2 n. 1.

26. 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

27. *Yannotti*, 415 F.Supp.2d at 292, n. 70.

28. *See Labat*, 905 F.2d at 23 ("[T]he *Pinkerton* theory is not available on this appeal, for the jury was not instructed that it could find Labat guilty of possession on this basis.").

29. *Id.* (brackets and emphasis added).

30. *See Salinas v. United States*, 522 U.S. 52, 64, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (stating the common-law principle "that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators"). *See also United States v. Saavedra*, 223 F.3d 85, 96 (2d Cir.2000) (Cabranes, J., dissenting) (stating the uncontroversial principle that " 'a defendant is liable for the acts of a co-conspirator in furtherance of the conspiracy' ") (quoting *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir.1994)).

acts.[31] The Opinion's reference to *Pinkerton*, which was admittedly erroneous, had no affect on the analysis or outcome of that Opinion. Accordingly, *Labat* is not a controlling decision for purposes of reconsideration.

### 2. *Bruno*

Yannotti also takes issue with this Court's application of *United States v. Persico*[32] to the statute of limitations analysis. In *Persico*, the Second Circuit stated:

> Because the RICO conspiracy statute does not require proof of an overt act, we believe that the crime of RICO conspiracy is not complete until the purposes of the conspiracy either have been accomplished or abandoned.[33]

The court further explained that "the agreement proscribed by section 1962(d) is conspiracy to participate in a charged enterprise's affairs, not conspiracy to commit predicate acts."[34] Because the charged enterprise's affairs included construction industry extortion, conspiracy to commit securities fraud, and securities fraud,[35] the statute of limitations was deemed satisfied as to Yannotti even though the Government offered no proof that Yannotti himself agreed to commit those racketeering acts.

Yannotti argues that this reasoning is suspect given the following statement by the Second Circuit in *Bruno*: "Here, because we reverse the RICO conspiracy convictions on other grounds, we do [not] reach the issue, as we did not in *Spero*, of what implications a defendant's continued membership in an ongoing organized crime family may have on the statute of limitations for a conspiracy charge."[36] According to Yannotti, "[h]ad *Persico* meant that mere continued membership in an ongoing organized crime family satisfies the statute of limitations for a RICO conspiracy charge, *Bruno* would have stated as much, rather than passing on the question."[37]

What Yannotti fails to recognize is the context in which the *Bruno* statement was made. In *Bruno*, the defendants were charged with "violating the RICO statute by conspiring to commit the predicate racketeering acts enumerated in Count II," otherwise referred to as "racketeering conspiracy."[38] Count II charged several defendants with "conducting the affairs of the Genovese Family enterprise through a pattern of racketeering activities, consisting of five predicate acts."[39] However, four out of the five enumerated racketeering activities were committed outside the

---

**31.** *See, e.g.*, Trial Transcript ("Tr.") at 5059, 5074–78, 5082–83, 5106.

**32.** 832 F.2d 705 (2d Cir.1987).

**33.** *Id.* at 713.

**34.** *Id.*

**35.** For example, Louis Mariani, a co-defendant, was convicted of conspiracy to commit securities fraud during the period 1995 through 2002. *See* Presentence Report of Louis Mariani ¶ 23. Mariani was also convicted of two counts of substantive securities fraud during the same time period. *See id.* ¶¶ 24–25. As for construction industry extortion, Michael DiLeonardo, a cooperating witness, pled guilty in May 2003 to, *inter alia*, extortion of various construction companies from 1980 through November 2002, the time he began cooperating with the Government. *See* 8/24/05 Tr. at 2985–86. DiLeonardo testified that from 1992 through June 2002, he remitted millions of dollars in proceeds from construction industry extortion to Gotti. *See id.* at 2919, 2944.

**36.** *Bruno*, 383 F.3d at 81, n. 10.

**37.** 3/20/06 Letter at 10.

**38.** *Bruno*, 383 F.3d at 76.

**39.** *Id.*

limitations period.[40] Only the obstruction-of-justice conspiracy ("Racketeering Act Four") occurred within the limitations period.[41] But the conviction for that conspiracy was reversed because the evidence was legally insufficient to prove either the second or third elements of a conspiracy to obstruct justice.[42] Thus, the Second Circuit was faced with a conviction for RICO conspiracy where none of the alleged predicate acts were proved to be committed *by anyone* within the limitations period. It was within this context that the Second Circuit declined to rule on whether mere membership in an organized crime family can support a RICO conspiracy conviction.

The limited relevance of the *Bruno* statement to the unique fact pattern presented in that case is further supported by the court's reference to *United States v. Spero*.[43] In *Spero*, "the Government alleged that Spero, while conducting the affairs of the Bonanno Organized Crime Family, conspired in violation of 18 U.S.C. § 1962(d) to engage in five specifically enumerated racketeering acts prohibited by 18 U.S.C. § 1962(c)."[44] However, it was uncontested that Racketeering Acts # 2–5 were all completed before the five-year limitations period ended on May 25, 1994, while Racketeering Act # 1, a loansharking conspiracy, extended into May 1999.[45] The defendant argued that the Government failed to prove that any of his loansharking activities took place after May 25, 1994, thereby rendering the RICO conspiracy count time-barred.[46]

The district court rejected defendant's argument on the basis of *United States v. Salerno*,[47] which in turn relied on *Persico*. "The [district] [c]ourt understood these cases to stand for the proposition that once the Government established that Spero continued to act as a member of the Bonanno Organized Crime Family after May 25, 1994, the RICO conspiracy with which he was charged was deemed to have operated after that date as well—regardless of when Racketeering Act # 1 took place."[48] The Second Circuit found it unnecessary to pass on the district court's interpretation of *Persico* and *Salerno*, holding that the defendant failed to rebut the presumption that the loansharking conspiracy continued past May 25, 1994.[49]

The statements made in *Bruno* and *Spero* do not undermine this Court's interpretation of *Persico*. Rather, these statements merely evince the Second Circuit's reluctance to hold that a RICO conspiracy conviction may be supported by a defendant's mere membership in an organized crime family, without the presence of any timely racketeering acts by any co-conspirator. *Bruno*, therefore, is not a controlling decision overlooked by this Court. In

---

40. *See id.* at 81, n. 10.

41. *See id.*

42. *See id.* at 87–88.

43. 331 F.3d 57 (2d Cir.2003).

44. *Id.* at 59.

45. *See id.* ("This allegation, if proven, would bring the charged conduct within the limitations period.").

46. *See id.*

47. 868 F.2d 524, 534 (2d Cir.1989) (holding that a RICO conspiracy is complete only when the purposes of the conspiracy have either been accomplished or abandoned).

48. *Spero*, 331 F.3d at 59–60. Here, Yannotti never claimed to have withdrawn from the Gambino Crime Family. Rather, Yannotti argued that the loansharking conspiracies with which he was charged ended outside the statute of limitations. *See, e.g.*, Tr. at 4816–18, 5017–18.

49. *See id.* at 60.

sum, the key is whether any predicate acts were committed by any co-conspirator within the RICO limitations period, not the correlation of particular predicate acts to particular defendants.[50] Here, predicate acts within the limitations period were committed by Yannotti's co-conspirators.[51] Having failed to withdraw from the charged conspiracy, Yannotti is responsible for these acts even though he did not agree to commit those particular acts.[52] Yannotti's motion for reconsideration is therefore denied.

### C. Bail

The Bail Reform Act sets forth the procedures by which judicial officers determine whether a convicted defendant is eligible for release pending appeal.[53] The Second Circuit explained that:

> [w]hile the language of section 3143(b)(2) compels detention, an exception permits release of mandatory detainees who meet the requirements for release under section 3143(b)(1), and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Thus, section 3143(b)(1) supplies the threshold requirements that a person convicted of a violent crime must

meet. To satisfy those requirements, the trial judge must find that the person poses no risk of flight and no danger to the community during release and that the appeal "raises a substantial question of law or fact likely to result in" reversal, a new trial, or a reduced sentence, and is not interposed for purposes of delay. 18 U.S.C. § 3143(b)(1). Only then does the trial court consider the presence of exceptional circumstances making detention inappropriate. *See United States v. Carr,* 947 F.2d 1239, 1240 (5th Cir.1991) (per curiam) (exceptional reasons provision to be applied on original application despite inclusion of provision "in a section generally covering appeals").[54]

On March 3, 2005, this Court affirmed the magistrate judge's decision denying Yannotti's initial bail application.[55] At that time, Yannotti faced a potential sentence of life in prison without parole, which I found provided a strong incentive to flee.[56] But Yannotti no longer faces a life sentence, having been acquitted of all but one charge. Thus, his risk of flight is substantially reduced. I also noted that Yannotti was charged with crimes of violence, including two attempted murders and a double homicide, and that he therefore posed

---

**50.** *See United States v. Ciccone,* 312 F.3d 535, 542 (2d Cir.2002) ("Gotti need not be named in a predicate act charged in the indictment to be guilty of a racketeering conspiracy that includes that predicate act.").

**51.** *See supra* note 34.

**52.** "[A] conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts that are elements of a substantive count to be found guilty of the racketeering conspiracy, for 'it suffices that he adopt[ed] the goal of furthering or facilitating the criminal endeavor.'" *Ciccone,* 312 F.3d at 542 (quoting *Salinas,* 522 U.S. at 65, 118 S.Ct. 469).

**53.** *See* 18 U.S.C. §§ 3143(b), 3145(c).

**54.** *United States v. DiSomma,* 951 F.2d 494, 496 (2d Cir.1991).

**55.** *See United States v. Yannotti,* No. 04 CR 690, 2004 WL 488644, at *1 (S.D.N.Y. Mar. 3, 2005) ("I now conclude that the government has demonstrated that no conditions of release will reasonably assure Yannotti's appearance and the safety of the community.") (footnotes omitted).

**56.** *See id.*

a danger to the community.[57] Because Yannotti has been acquitted of those charges, the evidence of danger to the community is not as strong as it was. Accordingly, there may be some combination of conditions that could reasonably assure the safety of the community. However, Yannotti must also satisfy the third requirement—"that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[58] Although Yannotti may have a substantial appellate issue regarding the statute of limitations issue, I need not decide the likelihood of reversal or a new trial because there are no remarkable or uncommon factors associated with Yannotti's detention that would constitute exceptional circumstances favoring release pursuant to 18 U.S.C. § 3145(c).[59]

■ "Exceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'"[60] "The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"[61] For example, an "unusual factual or legal question" may constitute exceptional circumstances as may a "merely substantial question" combined with "one or more remarkable and uncommon factors."[62] However, circumstances that are "purely personal" do not rise to the level of exceptional circumstances that would warrant release.[63]

■ Yannotti argues that exceptional circumstances support his release as "the RICO conspiracy/statute of limitations issue raised by Yannotti satisfies the standards set forth in *DiSomma*, because the Second Circuit has expressly reserved on that question, leaving it an open one."[64] I disagree. *DiSomma* teaches that a substantial question may suffice only if it accompanied by one or more remarkable and

57. *See id.*

58. 18 U.S.C. § 3143(b)(1)(B).

59. *See generally DiSomma*, 951 F.2d at 498 (finding exceptional reasons for release where the "element of the crime called into question on appeal [violence in a conspiracy to commit robbery conviction] is the element of the bail statute that bars release" and there is a direct and substantial challenge to that element on appeal).

60. *United States v. Lea*, 360 F.3d 401, 403 (2d Cir.2004) (quoting *DiSomma*, 951 F.2d at 497).

61. *Id.*

62. *DiSomma*, 951 F.2d at 497 ("We do think that an unusual legal or factual question can be sufficient, as it is here, to meet the test. On the other hand, a merely substantial ques-

tion may be sufficient, *in the presence of one or more remarkable and uncommon factors*, to support a finding of exceptional reasons for the inappropriateness of detention.") (emphasis added).

63. *United States v. Lippold*, 175 F.Supp.2d 537, 540 (S.D.N.Y.2001). *See also United States v. Bryant*, 873 F.Supp. 660, 663 (N.D.Ga.1994) (desire to spend time with 2-year-old son before incarceration insufficient); *United States v. Mahabir*, 858 F.Supp. 504, 508 (D.Md.1994); *United States v. Douglas*, 824 F.Supp. 98, 99–100 (N.D.Tex.1993) (possible retaliation in jail by co-defendants insufficient); *United States v. Bloomer*, 791 F.Supp. 100, 102 (D.Vt.1992) (family obligation and medical condition insufficient); *United States v. Taliaferro*, 779 F.Supp. 836, 838 (E.D.Va.1992) (difficult pregnancy of teenage daughter insufficient).

64. 5/8/06 Letter at 11.

uncommon factors.[65] While Yannotti's argument may be relevant with respect to the third requirement of section 3143, it does not present the type of exceptional circumstance contemplated in section 3145. Accordingly, Yannotti's motion for bail pending appeal is denied.

## IV. CONCLUSION

For the foregoing reasons, Yannotti's motion for reconsideration is denied as his request for bail pending appeal. The Clerk of the Court is directed to close this motion (Document # 186).

SO ORDERED.

---

**65.** *See DiSomma,* 951 F.2d at 497.