*1007
 
 KOZINSKI, Circuit Judge:
 

 We must decide whether section 303(b) of the Bankruptcy Code strips a creditor of standing to thrust a debtor into involuntary bankruptcy if the. debtor asserts a counterclaim against the creditor.
 

 Background
 

 Seko, the accused bankrupt here, borrowed $750,000 from two lenders in 1986, pledging real estate as security. Chicago Title issued an owner’s title insurance policy on the property to Seko and separate title insurance policies to the lenders. In 1988 things began to unravel. An unrelated company, alleging that Seko had doctored the title documents, claimed ownership of the property and commenced an action to quiet title. Seko immediately stopped paying the lenders on the promissory notes. With their security interest under attack and payment on the debt not forthcoming, the lenders complained to Chicago Title, who promptly settled the lenders’ claims. In exchange, the lenders assigned their notes to Chicago Title. Chicago Title then sued Seko in state court for payment on the notes. Seko turned around and counterclaimed to enforce its own policy insuring the title on the property. Chicago Title refused to honor the policy, arguing that Seko had obtained the policy fraudulently by doctoring the title. Thus, two disputes had arisen: First, Chicago Title (as assignee of the lenders) wanted Seko to pay on the notes and, second, Seko wanted Chicago Title (as title insurer to Seko) to honor the owner’s title policy.
 

 Just before trial was set to begin in state court, Chicago Title filed an involuntary Chapter 7 petition against Seko in bankruptcy court. In filing the petition, Chicago Title put on only its lender’s hat, as assignee of the promissory notes. Seko moved to have the petition dismissed on the ground that the claim was subject to a bona fide dispute under 11 U.S.C. § 303(b). Pointing to Chicago Title’s role as title insurer, Seko argued that its counterclaim would offset its liability on the notes; because the dispute over the title documents remained unresolved, Seko argued, Chicago Title may have had a duty to indemnify Seko for losses arising out of the title failure. The bankruptcy court held for Seko and dismissed the petition; the BAP affirmed.
 

 Discussion
 

 A creditor does not have standing to file an involuntary Chapter 7 petition if its claim is “contingent as to liability or the subject of a bona fide dispute.” 11 U.S.C. § 303(b) (1994). Seko focuses on the term “bona fide dispute,” arguing that its counterclaim under the title insurance policy disqualifies Chicago Title’s claim.
 
 [1]
 
 Because Seko’s counterclaim exceeds the amount of Chicago Title’s claim, it could ultimately preclude judgment for Chicago Title. Thus, Seko argues, the claim is disputed.
 

 Section 303(b) is rather tight-lipped about the meaning of a “dispute,” but it whispers enough hints to tell us that a counterclaim doesn’t automatically render a claim subject to dispute. We begin with the definition of a claim, the sine qua non of bankruptcy. The Bankruptcy Code defines claim quite broadly: “ ‘Claim’ means — right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....” 11 U.S.C. § 101(5)(A). Section 303(b) prevents two types of claims from being the basis of an involuntary petition: those that are “contingent as to liability” and those that are “the subject of a bona fide dispute.”
 
 [2]
 
 Both exceptions aim to pre
 
 *1008
 
 vent creditors from using the threat of an involuntary petition to bully an alleged debt- or into settling a speculative or validly disputed debt.
 
 See
 
 2 Collier on Bankruptcy ¶ 803.03[2][b][i].
 

 Chicago Title’s claim against Seko is not contingent as to liability. Claims are contingent as to liability when the debtor’s duty to pay arises only upon the occurrence of a future event that was contemplated by the parties at the time of the contract’s execution.
 
 See In re Sims,
 
 994 F.2d at 220 (citing
 
 In re All Media Properties, Inc.,
 
 5 B.R. 126, 132 (Bankr.S.D.Tex.1980)). The classic example is a wager between two parties; until the wagered-on event comes to pass, both have contingent liabilities in the amount of the bet. No such future event is contemplated by the notes. Therefore, unless the claim is subject to a bona fide dispute, Chicago Title has standing to bring an involuntary petition.
 

 Seko claims that it has raised a bona fide dispute because it has a separate claim against Chicago Title that, if found to be valid, would completely offset Chicago Title’s claim against it. But the statute is not concerned with who ultimately owes money to whom; rather,- it is concerned with whether the creditor’s claim is disputed. Although there may be a dispute regarding who ultimately owes money to whom, Seko has not really disputed the validity of the
 
 claim
 
 filed by Chicago Title. Instead, it contends that its counterclaim against Chicago Title, if successful, could yield enough money to cancel out its debt on the notes. But if the two lenders had not assigned their notes to Chicago Title, there would be no dispute as to the validity of their claims and their concomitant ability to file an involuntary petition. We see no reason the result should differ merely because the claims now belong to an entity against which Seko alleges it has a claim. We therefore hold that the existence of a counterclaim against a creditor does not automatically render the creditor’s claim the subject of a “bona fide dispute.” So long as the petitioning creditor has established that there is no dispute regarding the debtor’s liability on the creditor’s claim, the creditor has standing under section 303(b) to bring a petition.
 

 Many courts have agreed that “the debt- or’s assertion of counterclaims, even if of substance, does not render the petitioner’s claim the subject of a bona fide dispute.”
 
 In re Drexler,
 
 56 B.R. 960, 969 (Bankr.S.D.N.Y.1986);
 
 accord In re Sims,
 
 994 F.2d at 221;
 
 In re Audio Visual Workshop, Inc.,
 
 211 B.R. 154, 158-59 (Bankr.S.D.N.Y.1997);
 
 IBM Credit Corp. v. Compuhouse Systems, Inc.,
 
 179 B.R. 474, 479 (W.D.Pa.1995).
 
 But see Associated Elec. Supply Co. v. C.B.S. Elec. Sales Corp.,
 
 288 F.2d 683, 684-85 (8th Cir. 1961). Those courts have further held, however, that a counterclaim may serve “to work a diminution or setoff of the claim of the petitioning creditors.”
 
 In re Drexler,
 
 56 B.R. at 969;
 
 accord In re Audio Visual Workshop, Inc.,
 
 211 B.R. at 158. Because the Bankruptcy Code requires that the claims of petitioning creditors against a debt- or “aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims,” 11 U.S.C. § 303(b), this diminution can reduce a petitioning creditor’s claim so that the creditor is no longer eligible to file an involuntary petition.
 
 [3]
 

 The practice of netting out the claims of debtors and their creditors only makes sense when a counterclaim for recoupment on a creditor’s claim is involved. Such a counterclaim arises only out of the same transaction which forms the basis of the creditor’s claim,
 
 see Newbery Corp. v. Fireman’s Fund Ins. Co.,
 
 95 F.3d 1392, 1399 (9th Cir.1996) (citing 4 Collier on Bankruptcy ¶ 553.03, at 513-15), and not when the counterclaim originates in a separate transaction. If recoupment applies, “the creditor’s claim arises from the
 
 *1009
 
 same transaction as the debtor’s claim, [and] it is essentially a defense to the debtor’s claim against the creditor rather than a mutual obligation.”
 
 Id.
 
 at 1400 (quoting
 
 In re B & L Oil Co.,
 
 782 F.2d 155, 157 (10th Cir. 1986)) (internal quotation marks omitted).
 

 Although recoupment is usually asserted by a creditor against a debtor, there is no reason the principles should differ when the positions of the parties are reversed. Because recoupment operates akin to a defense against a claim, it can properly be seen as creating a dispute as to that claim in a way that a garden-variety counterclaim cannot. When allowing counterclaims to offset claims, courts have generally observed this requirement.
 
 See, e.g., In re J.B. Lovell Corp.,
 
 88 B.R. 459, 462 (Bankr.N.D.Ga.1988) (a counterclaim for antitrust violations did not create bona fide dispute with respect to claim based on contract);
 
 In re Kreidler Import Corp.,
 
 4 B.R. 256, 259 (Bankr.D.Md.1980) (a counterclaim for liquidated damages on the contract that the petitioning creditor sued on created a bona fide dispute). This condition also accords with the text of section 303(b), by forcing the accused bankrupt to allege a dispute as to the validity of the claim, and not merely to assert that the petitioning creditor owes it money in the aggregate.
 

 Seko’s claim that Chicago Title owes it money based on its owner’s title insurance policy doesn’t put in doubt the claims based on the notes assigned to Chicago Title. Title insurance contracts are contracts of indemnity, and “[a]bsent a ‘loss’ there is no obligation to pay benefits under a title policy.”
 
 Karl v. Commonwealth Land Title Ins. Co.,
 
 20 Cal.App.4th 972, 978, 24 Cal.Rptr.2d 912 (1993). Chicago Title’s notes do not implicate any sort of loss based on title to the property. The lenders advanced money to Seko, and Seko later ceased paying the debt it owed on the notes. Whether or not it held good title to the land is irrelevant to its obligation to repay the money.
 
 [4]
 
 Even though the failure of Seko’s title caused Chicago Title to pay the lenders’ claims under their separate title insurance policies, leading to Chicago Title’s acquisition of the notes, this doesn’t make the lenders’ claims on these notes a loss caused by title defects visa-vis Seko; they existed because Seko received money and subsequently failed to pay it back as promised. If Seko believes it has a meritorious claim under its policy of title insurance it could certainly bring that claim against Chicago Title.
 
 [5]
 
 But doing so wouldn’t dispute the validity of Chicago Title’s claim under the notes.
 

 This reading of section 303 does not strip away its protection of accused bankrupts, forcing them to settle claims that they have good reason not to pay. While a counterclaim will not defeat a creditor’s
 
 standing
 
 to bring an involuntary petition, section 303(b) is not the last line of defense against abusive filings. A more pertinent provision in cases of this sort is section 303(h)(1), which requires creditors to show equity insolvency.
 
 [6]
 
 A counterclaim may very well become relevant under subsection (h)(1); If a solvent person has missed payments on a debt simply because the creditor owes him money on an unrelated claim, the creditor may not be able to establish that he is “generally not paying” his debts.
 
 [7]
 
 But if the alleged debtor
 
 *1010
 
 isn’t paying his debts generally (not just those owed to the petitioning creditor), the counterclaim will not be enough to keep the petition from going forward.
 
 [8]
 
 Thus, although Seko’s counterclaim does not create a bona fide dispute for purposes of section 303(b), Seko may still use that counterclaim as evidence that it is in fact solvent in the equity sense of “generally paying” its debts on time.
 

 Seko’s counterclaim does not raise a bona fide dispute under section 303(b). The opinion of the BAP is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 [9]
 

 [1]
 

 . The parties focus on the adjective "bona fide,” the meaning of which we have not yet addressed in this context. Other circuits have adopted an objective interpretation of the term.
 
 See In re Sims,
 
 994 F.2d 210, 221 (5th Cir.1993);
 
 In re Rimell,
 
 946 F.2d 1363, 1365 (8th Cir.1991);
 
 Bartmann v. Maverick Tube Corp.,
 
 853 F.2d 1540, 1544 (10th Cir.1988);
 
 In re
 
 Busick, 831 F.2d 745, 750 (7th Cir.1987). Seko suggests a subjective standard, arguing that because its nonpayment of Chicago Title’s claim was in good faith, there is a bona fide dispute. The ambiguity demonstrates why we should not use Latin where English will do. Because our resolution of the case turns on the meaning of "dispute,” not "bona fide," we need not resolve the ambiguity here.
 

 [2]
 

 . The other requirements of section 303(b) aren't relevant to this appeal.
 

 [3]
 

 . This view is supported by Bankruptcy Rule 1011(d), which states that "[a] claim against a petitioning creditor may not be asserted in the answer [to an involuntary petition] except for the purpose of defeating the petition.” Bankr.R. 1011(d). Further support is found in the Advisory Committee’s Note to Rule 1011(d), which favorably cites
 
 Harris v. Capehart-Famsworth Corp., 225
 
 F.2d 268 (8th Cir.1955).
 
 Harris
 
 held in part that an alleged debtor could use counterclaims "in diminution or extinguishment” of the claims of the creditors against whom the counterclaims were directed.
 
 Id.
 
 at 270.
 

 [4]
 

 . Seko’s obligation is the same whether it incurred the debt on an unsecured basis, on the basis of a security interest in chattel, or on the basis of a deed of trust on real estate as it did here. Further, it is unthinkable that Chicago Title could be required to defend a suit for payment on the notes brought by the lenders. It is true that "the duty to defend is broader than the duty to indemnify,”
 
 Horace Mann Ins. Co. v. Barbara B.,
 
 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993), however, "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy.”
 
 Waller v. Truck Ins. Exchange, Inc.,
 
 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). If the lenders were to sue because the title to land was no good, the title insurance policy would require Chicago Title to defend the suit. However, an action to recover money owed under a loan contract is in no way the sort of risk covered by title insurance.
 

 [5]
 

 . Indeed, its loss and thus its damages might be enhanced by Chicago Title’s failure to pay promptly if its claim is meritorious.
 

 [6]
 

 . Creditors must show that "the debtor is generally not paying such debtor’s debts as such debts become due unless such debts are the subject of a bona fide dispute." 11 U.S.C. § 303(h)(1).
 

 [7]
 

 . This may lead to the peculiar result that a counterclaim isn’t a "bona fide dispute” under section 303(b), but is a "bona fide dispute” under
 
 *1010
 
 section 303(h)(1). This result comes about not because "bona fide dispute” has a different meaning in the two subsections, but because it modifies different terms.
 
 Compare
 
 11 U.S.C. § 303(b) (referring to “a claim against such person that is not ... the subject of a bona fide dispute”),
 
 with id.
 
 § 303(h)(1) (allowing an alleged debtor to avoid an involuntary filing when the "debtor's debts ... are the subject of a bona fide dispute”). It could certainly be the case that an alleged debtor does not dispute its liability on a claim, but instead disputes whether it owes a debt overall, as Seko does here. This objection is properly dealt with under subsection (h), not subsection (b). As one court has noted, "the debtor's true protection against an improvident involuntary petition lies in the independent requirement of [Bankruptcy] Code § 303(h) that it be established that the debtor is generally not paying its debts as they become due.”
 
 In re Ross,
 
 63 B.R. 951, 961 (Bankr.S.D.N.Y.1986).
 

 [8]
 

 . Section 303(i) provides further protection against unwarranted involuntary petitions: If the petition is filed in bad faith, the bankruptcy court may award punitive damages in addition to any compensatory damages caused by the filing.
 
 See
 
 11 U.S.C. § 303(f)(2).
 

 [9]
 

 . The BAP awarded attorney’s fees to Seko. Because we reverse the BAP's holding on the merits, we also reverse the fee award. Further, given our view of the merits, we decline to award Seko fees under Fed. R.App. P. 38 for its defense of this appeal.