# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 3, 2014

No. 12-60784

Lyle W. Cayce
Clerk

In the Matter of:  GREEN HILLS DEVELOPMENT COMPANY, L.L.C.,

Debtor.

CREDIT UNION LIQUIDITY SERVICES, L.L.C., Creditor, formerly known as Texans Commercial Capital, L.L.C.,

Appellant,

v.

GREEN HILLS DEVELOPMENT COMPANY, L.L.C.,

Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Credit Union Liquidity Services, L.L.C. (CULS)[1] appeals the dismissal of its petition for involuntary bankruptcy filed against Green Hills Development Company, L.L.C. (Green Hills) pursuant to 11 U.S.C. § 303.  Because we hold

---

[1] CULS was incorporated as Texans Commercial Capital, L.L.C., but changed its name in 2007.

No. 12-60784

that CULS lacked standing to bring the involuntary petition, we affirm the bankruptcy court's dismissal on this alternative ground.

## I

Green Hills entered into a construction loan agreement with CULS as part of a plan to develop approximately 403 acres of land in Brandon, Mississippi (the property). Under that agreement, Green Hills executed a promissory note (the Note) for $14.5 million as well as a related security agreement and Deed of Trust on the property. At closing, CULS dispersed $8,250,000 to enable Green Hills to acquire the property and reserved $5,500,000 for construction advances.[2] Separately, in order to provide additional funding for the development, Green Hills also formed the Stonebridge Public Improvement District (the PID) pursuant to Mississippi law.[3] The PID entered into a trust indenture, with the Bank of the Ozarks as trustee, through which the PID issued bonds, using the proceeds to improve the property.

Green Hills requested and received from CULS six disbursements from the construction reserve totaling $4,455,566.92. Request for a seventh draw was made, but CULS did not provide the funds. Green Hills made some of the payments required under the Note, ultimately repaying approximately $5,921,930.36 of the loan's principal, although its payments were not always timely. Toward the end of 2008, the relationship between Green Hills and CULS soured, and Green Hills did not repay the outstanding balance of $8,074,348.57

---

[2] The remaining $750,000 was set aside in reserve to provide an advance to cover interest payments due under the agreement, if necessary. In addition, the loan agreement was later modified to reduce the total commitment slightly, including the construction reserve, and extend the maturity date from August 5, 2008, to November 3, 2008. Although the precise amounts and contractual details are not at issue in this appeal, the parties present different characterizations of the disbursements and the sequence of events leading to the modification.

[3] *See* MISS. CODE ANN. §§ 19-31-1 to 19-31-51 (West 2013).

No. 12-60784

when the Note matured on November 3, 2008. Green Hills also fell behind in its bond obligations to the PID.

Green Hills filed suit against CULS in Texas state court (the Texas Litigation), seeking damages estimated to exceed $20 million, an injunction preventing CULS from collecting its debt under the Note, and other relief. Green Hills asserted a wide variety of claims and theories to invalidate the loan agreement and offset its debt, including fraud, promissory estoppel, breach of contract, breach of fiduciary duty, equitable estoppel, unconscionability, duress, reformation, equitable subordination, and various statutory claims. CULS answered and filed a counterclaim for $8,315,065.09, the amount it claimed was then owed under the loan agreement. CULS also filed a motion for summary judgment on all of Green Hills's claims and its own counterclaims. The state court held a hearing on that motion, among others, at which it partially granted and partially denied summary judgment in favor of CULS. The Texas court did not issue a written order, but the record includes a proposed order that CULS prepared and filed with the Texas court after the hearing. That proposed order would have granted summary judgment to CULS only on Green Hills's claims under the Texas Deceptive Trade Practices Act. Subsequently, and after dismissal of the bankruptcy petition at issue in this appeal, the Texas Litigation was removed to the Federal District Court for the Northern District of Texas.[4]

As the Texas Litigation was proceeding in state court, CULS filed a petition for involuntary bankruptcy against Green Hills in the Bankruptcy Court for the Southern District of Mississippi. Green Hills filed a motion to dismiss the petition, arguing that involuntary bankruptcy was an improper vehicle to resolve what was essentially a two-party dispute and that CULS lacked standing because its claim against Green Hills was subject to a bona fide dispute as to

---

[4] *See Green Hills Dev. Co. v. Credit Union Liquidity Servs. LLC*, No. 3:11-CV-1885 (N.D. Tex. filed Aug. 3, 2011).

3

No. 12-60784

liability or amount. CULS filed a motion for summary judgment on all claims. The bankruptcy court took all motions under advisement pending trial. At the conclusion of the trial, the bankruptcy court issued a written opinion dismissing the petition. The court held that CULS had failed to offer sufficient evidence that Green Hills was generally not paying its debts as they came due, and that, pursuant to § 303(h)(1), relief was not appropriate. The bankruptcy court held in the alternative that relief under § 303(h)(1) was improper because Green Hills's debt to CULS was subject to a bona fide dispute. The court reached this conclusion despite holding that CULS's claim was not subject to a bona fide dispute for the purposes of standing to file the petition under § 303(b). CULS filed a motion for reconsideration or a new trial, which the bankruptcy court denied. CULS then appealed to the district court, which affirmed the judgment, expressing agreement with the bankruptcy court's analysis. This appeal followed.

## II

After CULS filed its notice of appeal, the district court in which the Texas Litigation was pending issued an order denying in part another motion by CULS for summary judgment. We granted Green Hills's motion to take judicial notice of that order. Shortly before oral argument, the district court in the Texas Litigation issued another order, this time granting CULS's motion to clarify the summary judgment order. CULS has filed an unopposed motion to take judicial notice of that order. As the content of that order is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, we grant CULS's motion to take judicial notice of the clarification order.[5]

---

[5] *See* FED. R. EVID. 201(b); *United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) ("An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court.")

No. 12-60784

## III

In general, we review a bankruptcy court's findings of fact for clear error and conclusions of law de novo.[6] To the extent that we are presented with a mixed question of law and fact, we consider the question de novo,[7] although we have recognized that the "underlying facts" in mixed questions should be reviewed for clear error.[8] Whether a debt is subject to a "bona fide dispute" is a question of fact, which we review for clear error.[9]

## IV

Recognizing that involuntary bankruptcy is a particularly severe remedy, Congress limited the circumstances in which creditors may force a debtor into such a proceeding.[10] Section 303 of Title 11 permits creditors to file an involuntary petition against a debtor.[11] Ordinarily, a case under § 303 may be

---

[6] *U.S. Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89, 91 (5th Cir. 2003); *see* FED. R. BANKR. P. 8013.

[7] *E.g.*, *ASARCO, L.L.C. v. Barclays Capital, Inc.* (*In re ASARCO, L.L.C.*), 702 F.3d 250, 257 (5th Cir. 2012) ("We also review mixed questions of law and fact de novo."); *Tummel & Carroll v. Quinlivan* (*In re Quinlivan*), 434 F.3d 314, 318 (5th Cir. 2005); *Westcap Enters. v. City Colls. of Chi.* (*In re Westcap Enters.*), 230 F.3d 717, 725 (5th Cir. 2000).

[8] *E.g.*, *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1600 (2013) ("This court reviews *de novo*, as a mixed question of law and fact, the district court's decision . . . . The district court's findings of 'underlying fact' are reviewed for clear error.").

[9] *Subway Equip. Leasing Corp. v. Sims* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993). *But see Platinum Fin. Servs. Corp. v. Byrd* (*In re Byrd)*, 357 F.3d 433, 440 n.3 (4th Cir. 2004) (concluding that, although some courts have categorically treated the issue of whether a claim is subject to a bona fide dispute as a factual finding, "the sounder view . . . is that the applicable standard of review depends on the nature of the bankruptcy court's decision" (citing *Key Mech. Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 119 (2d Cir. 2003), *abrogated on other grounds by Adams v. Zarnel* (*In re Zarnel*), 619 F.3d 156 (2d Cir. 2010))).

[10] *See* 30 CONG. REC. S7618 (daily ed. June 19, 1984) (statement of Sen. Max Baucus) ("I believe this amendment . . . is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion."); *see also In re Busick*, 831 F.2d 745, 749 n.2 (7th Cir. 1987).

[11] 11 U.S.C. § 303(a).

commenced only by three or more holders of qualifying claims; however, if the alleged debtor has fewer than twelve creditors, a single claimholder may file the petition.[12] A claimholder does not have standing to file a petition under § 303(b) if its claim is "the subject of a bona fide dispute as to liability or amount."[13] We conclude that CULS's claim was subject to a bona fide dispute, so CULS did not have standing to file the petition for involuntary bankruptcy. We therefore affirm the dismissal of its petition on that alternative ground.

We first address and reject CULS's assertion that Green Hills has forfeited any argument regarding § 303(b) by failing to file a cross-appeal. It is well established that an appellee may, without filing a cross appeal, advance an argument that "involve[s] an attack upon the reasoning of the lower court" so long as the appellee does not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary."[14] We have repeatedly affirmed this principle.[15] Every other circuit court likewise recognizes that an appellee is not limited to the reasoning of the district court and may raise any argument that is supported by the record to defend the

---

[12] *Id.* § 303(b).

[13] *Id.* The provision enumerates other criteria for qualifying claims not relevant to this dispute, for example that they be noncontingent and meet a minimum dollar amount. *Id.*

[14] *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924); *see also* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3904 (2d ed. 1992 & Supp. 2013).

[15] *E.g.*, *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1146 (5th Cir. 1993) ("Where, as here, the movants for summary judgment advanced several independent arguments in district court in support of their motions for summary judgment, we will affirm if any of those grounds support the district court's decision."); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254 n.4 (5th Cir. 1976) (recognizing that an appellee "is free to support the judgment secured below with any matter appearing in the record, including contentions, arguments, or theories specifically repudiated by the lower court as a basis for allowing his claim").

judgment.[16] This rule accords with the principle that we may affirm on any grounds supported by the record.[17] Green Hills does not enlarge its rights by arguing an alternative ground for affirmance; to the contrary, the result—dismissal of the petition—is identical. We may therefore consider whether the court should have dismissed the petition because CULS lacked standing under § 303(b).

Under § 303(b), an involuntary petition may be brought only by the "holder of a claim . . . that is not . . . the subject of a bona fide dispute as to liability or amount."[18] The provisions of § 303(b) were amended by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

---

[16] *See Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 892 (7th Cir. 2010); *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005); *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 758 (8th Cir. 2004); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 714-15 (2d Cir. 2001); *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 n.3 (6th Cir. 1998) (collecting cases in which "matters raised below as alternative grounds in support of a district court judgment" were considered on appeal); *Connell v. Trs. of the Pension Fund of the Ironworkers Dist. Council of N. N.J.*, 118 F.3d 154, 156 n.5 (3d Cir. 1997) (noting that the defendant need not attack the judgment in order to argue an alternative ground for affirmance); *Pritchett v. Alford*, 973 F.2d 307, 315-16 (4th Cir. 1992); *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1042 (9th Cir. 1992); *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1325 (1st Cir. 1992) ("[D]efendants remain free to defend the judgment below on grounds not accepted by the lower court."); *Synovus Fin. Corp. v. Bd. of Governors of the Fed. Reserve Sys.*, 952 F.2d 426, 431 (D.C. Cir. 1991) ("In the typical civil appeal, the prevailing party may support the judgment by any argument raised below even though the lower court rejected it and based its decision on another ground."); *Gholston v. Hous. Auth. of the City of Montgomery*, 818 F.2d 776, 780 n.3 (11th Cir. 1987) ("Despite its failure to cross-appeal, . . . appellee[] is entitled to raise any argument on appeal that supports the judgment of the district court."); *Emerson v. Labor Inv. Corp.*, 284 F.2d 946, 949 (10th Cir. 1960) ("Appellee seeks no relief which was not granted it in the court below and properly may raise any issue which was there considered even though it asserts that the court was in error.").

[17] *Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*), 440 F.3d 238, 245 (5th Cir. 2006) ("This Court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." (quoting *Bustamante v. Cueva* (*In re Cueva*), 371 F.3d 232, 236 (5th Cir. 2004))).

[18] 11 U.S.C. § 303(b)(1). The petition in this case was brought under § 303(b)(2), which incorporates the "bona fide dispute" exclusion by reference to "holders . . . of such claims." *Id.* § 303(b)(2).

(BAPCPA).[19]  Prior to BAPCPA, the provision did not include the phrase "as to liability or amount," and some courts, including this one, interpreted the pre-BAPCPA § 303(b) to deny standing to a creditor only when there was a bona fide dispute as to liability.[20]  A dispute as to the amount of the claim, even if as to the total amount of the claim (for example, through an offsetting counterclaim), was not considered a basis to deny standing.[21]  By adding the phrase "as to liability or amount" to § 303(b), Congress changed its meaning.[22]  Post-BAPCPA cases have recognized that a bona fide dispute as to the amount of the debt is now sufficient to deny a creditor standing to bring an involuntary petition.[23]  Thus,

---

[19] Pub. L. No. 109-8, 119 Stat. 23 (2005).

[20] *See Subway Equip. Leasing Corp. v. Sims* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993) (holding that the debtor's claim that the creditor (debtor's landlord) failed to mitigate its damages by reletting the property did not constitute a bona fide dispute under § 303(b) because that claim would "serve only to reduce the amount" of the debt and "would not constitute a substantial factual or legal question bearing on the debtor's liability"); *accord In re Smith*, 243 B.R. 169, 183 (Bankr. N.D. Ga. 1999) (holding that "[a] dispute as to the amount of a claim does not negate its existence if the legal obligation to pay is present" and therefore does not affect standing under § 303(b) (quoting *In re Braten*, 74 B.R. 1021, 1023 (Bankr. S.D.N.Y. 1987))).

[21] *Sims*, 994 F.2d at 221.  Some pre-BAPCPA cases did conclude that offsetting counterclaims that could erase the entire debt were sufficient to support the finding of a bona fide dispute under § 303(b).  *E.g.*, *Key Mech. Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 120 (2d Cir. 2003) ("[W]here a claim for offset arises out of the same transaction and is directly related to the creditor's underlying claim, and, if valid, could serve as a *complete defense to that claim*, a bona fide dispute exists." (emphasis added)), *abrogated by Adams v. Zarnel* (*In re Zarnel*), 619 F.3d 156 (2d Cir. 2010).

[22] Pub. L. No. 109-8, § 1234(a)(1)(A), (a)(2), 119 Stat. 23, 204.

[23] *E.g.*, *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 923 (Bankr. N.D. Tex. 2009) ("Now, it is clear that [under § 303(b)] a claim is the subject of a bona fide dispute if *either* the liability itself is in dispute or merely the amount is in dispute."); *In re Mountain Dairies, Inc.*, 372 B.R. 623, 633-34 (Bankr. S.D.N.Y. 2007) ("Prior to the 2005 amendments, some courts took the position that a debtor's counterclaim disputing the amount of a creditor's claim, and not the legitimacy or the existence of such claim, did not make the creditor's claim the subject of a bona fide dispute. It appears that this result may change as a consequence of the 2005 amendments, since a dispute as to amount is sufficient to disqualify the petitioning creditor." (quoting 2 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 303.30[2][b] (15th rev. ed. 2006))).

to the extent that our pre-BAPCPA precedent suggests to the contrary, that precedent is no longer good law.

The bankruptcy court held that a bona fide dispute did not exist under § 303(b). Although the court acknowledged that BAPCPA modified § 303(b) to "clarify that the bona fide dispute may relate either to liability on the claim or to the amount of the claim," it nevertheless appears to have adopted a restrictive definition, considering only the facial validity of the terms of the loan agreement and whether Green Hills contested entering into the agreement in 2005. By contrast, when analyzing § 303(h)(1), the court considered whether there was a bona fide dispute as to "liability on the debt *and/or the amount of the debt*," and took a much more expansive view of what could constitute a "dispute."

The bankruptcy court's analysis rested primarily on a pre-BAPCPA Ninth Circuit case, *Chicago Title Insurance Co. v. Seko Investment, Inc.* (*In re Seko Investment, Inc.*).[24] At issue in *Seko* was whether the debtor's counterclaim for coverage under its title insurance policy created a bona fide dispute as to the creditor's claim on a related note.[25] Because the note had been assigned to the title insurance company, the creditor in that instance was also the potentially liable insurer.[26] The debtor argued that payment under the insurance policy would offset the debt it owed under the note, and therefore a bona fide dispute existed as to the amount.[27] After acknowledging that a counterclaim that "arises . . . out of the same transaction which forms the basis of the creditor's claim" could create a bona fide dispute, the Ninth Circuit held that when the debtor's

---

[24] 156 F.3d 1005 (9th Cir. 1998).

[25] *Seko*, 156 F.3d at 1007.

[26] *Id.*

[27] *Id.*

counterclaim arises from a separate contract, it does not "put in doubt" the creditor's claims for the purposes of § 303(b).[28]

The bankruptcy court's reliance on *Seko* is misplaced. *Seko* concerned only the treatment of *unrelated* counterclaims advanced by a debtor as a potential offset to the creditor's debt.[29] Here, Green Hills does not argue that a bona fide dispute exists because of an offset arising from an unrelated counterclaim. Green Hills's claims in the Texas Litigation directly call into question Green Hills's liability under the Note, including the amount it may owe. *Seko* provides no justification to treat *related* counterclaims differently under the two subsections. Furthermore, as discussed above, the addition of the phrase "as to liability or amount" to § 303(b) eliminated the textual justification that existed prior to BAPCPA. Finally, even if *Seko* remains valid in the Ninth Circuit after BAPCPA, this circuit has never adopted its holding, and we see no reason to adopt it now.[30]

In *Subway Equipment Leasing Corp. v. Sims* (*In re Sims*),[31] we stated that, in considering whether a claim is subject to a bona fide dispute, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute . . . ."[32] Under this objective standard, the petitioning creditor

---

[28] *Id.* at 1008-09.

[29] Like the Ninth Circuit, this court has also held that the assertion of unrelated counterclaims cannot constitute a bona fide dispute, but in doing so it made no distinction between §§ 303(b) and 303(h)(1). *Subway Equip. Leasing Corp. v. Sims* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993).

[30] In a pre-BAPCPA, unpublished case, this court applied a single standard to both §§ 303(b) and 303(h)(1), although the question raised in *Seko* was not before the court. *Norris v. Johnson* (*In re Norris*), No. 96-30146, 114 F.3d 1182, 1997 WL 256808, at *5 (5th Cir. Apr. 11, 1997) (per curiam) ("In sum, we hold that the unstayed final judgment against Norris was not subject to a bona fide dispute for purposes of 11 U.S.C. § 303(b)(1) and 303(h)(1).").

[31] 994 F.2d 210 (5th Cir. 1993).

[32] *Sims*, 994 F.2d at 221 (internal quotation marks omitted).

has the burden to establish a prima facie case that no bona fide dispute exists, after which the debtor must present evidence sufficient to rebut the prima facie case.[33] "[N]either the debtor's subjective intent nor his subjective belief is sufficient to meet this burden."[34] Furthermore, although the court "may be required to conduct a limited analysis of the legal issues" and its determination "will often depend . . . upon an assessment of witnesses' credibilities and other factual considerations," the court's aim is to "ascertain whether a dispute that is bona fide exists . . . not to actually resolve the dispute."[35]

For purposes of determining whether there was a bona fide dispute under § 303(h), but not under § 303(b), the bankruptcy court relied primarily on documentary evidence of the Texas Litigation, and it concluded that CULS's claim was subject to a bona fide dispute. The court noted that the Texas Litigation had been pending for more than a year and had involved numerous motions for summary judgment and more than a dozen hearings. Furthermore, the Texas court had acknowledged that several of the claims asserted by Green Hills would, if proved, "void the contract." In other words, the pending, unresolved claims directly concerned the "liability or amount" of the debt that Green Hills owed to CULS.

CULS argues that the bankruptcy court erred in considering the evidence of the Texas Litigation and therefore that Green Hills had offered no evidence

---

[33] *Id.*

[34] *Id.* (quoting *Rimell v. Mark Twain Bank* (*In re Rimell*), 946 F.2d 1363, 1365 (8th Cir. 1991)).

[35] *Id.* (first alteration in original) (quoting *Rimell*, 946 F.2d at 1365); *accord Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 945 (6th Cir. 2007) ("Importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist.") (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)).

to rebut the prima facie case.[36] CULS contends that the pleadings, briefing related to its motion for summary judgment, and hearing transcripts are not competent evidence of a bona fide dispute.[37] According to CULS, only a judgment in favor of Green Hills could constitute competent evidence of a bona fide dispute.[38] However, CULS cites no case law (other than cases discussing when judgments are considered final) for this assertion. Nor would such a rule make sense given the standard articulated in *Sims*, which limits the bankruptcy court's inquiry to the existence of a bona fide dispute and does not require resolution of the merits. Bankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute.[39]

Contrary to CULS's assertion, the bankruptcy court did not merely conclude that the existence of the Texas Litigation or the Texas court's apparent denial of summary judgment were, by themselves, dispositive. The bankruptcy court did find it significant that "the Texas judge, who held numerous hearings in the Texas Litigation over the nineteen months the case was pending before

---

[36] The bankruptcy court also concluded that CULS had failed to establish a prima facie case that a bona fide dispute did not exist. However, the court appears to have erroneously considered the evidence produced by Green Hills in reaching that conclusion. Furthermore, our precedent suggests that the existence of a valid loan agreement signed by the debtor and default by the debtor is sufficient to satisfy the requirements of a prima facie case, and those facts are undisputed in this case. *See Sims*, 994 F.2d at 221.

[37] CULS also complains about the testimony of Michael A. Heilman, the lead attorney in the Texas Litigation, arguing cryptically that he "did not have personal knowledge of CULS's debt." However, CULS did not appeal the bankruptcy court's decision to admit any of this evidence, including Heilman's testimony.

[38] CULS also spends several pages of its brief on this issue, arguing that the Texas Litigation does not constitute collateral estoppel. However, the bankruptcy court did not rely on any theory of collateral estoppel in its opinion.

[39] *See, e.g.*, *In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) (collecting cases in which courts have pointed to pending litigation in state court as evidence of a bona fide dispute under § 303(b)).

her, determined that there were facts which gave rise to a legitimate disagreement." However, the bankruptcy court also conducted a thorough, independent review of the evidence from the Texas Litigation.

Green Hills filed suit against CULS in early 2009, asserting a variety of claims attacking both the validity of the loan agreement and the amount due under that agreement. That suit survived multiple motions for summary judgment in both Texas state court and federal district court. More than four years later, at least some of those claims remain pending. Two different judges have unquestionably concluded that the factual allegations and legal theories advanced by Green Hills have enough merit to justify careful consideration. Given that a debtor may demonstrate the existence of a bona fide dispute without filing a separate lawsuit, a creditor whose claim is the object of unresolved, multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy. The § 303(b) requirement exists to prevent that very use of involuntary bankruptcy. Based on the extensive record of parallel litigation, CULS's claim is subject to a bona fide dispute.

Finally, CULS argues that, even if the bankruptcy court did not err in considering the evidence from the Texas Litigation, there is no bona fide dispute because an offsetting counterclaim can *never* be the basis of a bona fide dispute. Citing only a single, unpublished bankruptcy opinion from 2002, *In re American Cotton Suppliers International, Inc.*,[40] CULS asserts that "unsubstantiated counterclaims . . . do not call into question the validity of [] debts" and therefore cannot be evidence of a bona fide dispute. Even if this court were to find the reasoning from *American Cotton* persuasive, that case was decided under the pre-BAPCPA version of § 303(b), and, as discussed above, Congress has made

---

[40] No. 02-50003-7, 2002 Bankr. LEXIS 1972 (Bankr. N.D. Tex. Sept. 30, 2002).

clear that a claimholder does not have standing to file an involuntary petition if there is a "bona fide dispute as to liability or *amount*" of the claim.[41]

CULS's claim was subject to a bona fide dispute. We affirm the dismissal of the petition on the alternative ground that CULS lacked standing under § 303(b).

## V

After CULS submitted its brief in this appeal, Green Hills moved to sanction CULS for filing a frivolous appeal. We carried the motion with the case and now consider it. Green Hills argues that we should sanction CULS pursuant to Federal Rule of Appellate Procedure 38 because it abused the bankruptcy process to engage in gamesmanship, hid and mischaracterized important facts before the district and bankruptcy courts, and maintained frivolous arguments on appeal.

Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."[42] "An appeal is frivolous if 'the result is obvious or the arguments of error are wholly without merit.'"[43] This standard is rarely met, and we generally only order sanctions when the "great weight of the authority . . . [is] clearly on point and [does] not favor the [sanctioned party]."[44]

---

[41] 11 U.S.C. § 303(b)(1) (emphasis added).

[42] FED. R. APP. P. 38.

[43] *Howard v. St. Germain*, 599 F.3d 455, 458 (5th Cir. 2010) (quoting *Buck v. United States*, 967 F.2d 1060, 1062 (5th Cir. 1992)).

[44] *Stevenson v. E.I. DuPont De Nemours & Co.*, 327 F.3d 400, 410 (5th Cir. 2003) (citing *Stelly v. Comm'r*, 761 F.2d 1113, 1116 (5th Cir. 1985)); *see also Macklin v. City of New Orleans*, 300 F.3d 552, 554 (5th Cir. 2002) (ordering sanctions when a party "repeatedly advanced arguments on appeal that have been squarely rejected by Fifth Circuit caselaw, even after being alerted to the unfavorable authority by the district court").

No. 12-60784

We conclude that sanctions are not appropriate in this case. First, we decline, in this instance at least, to order sanctions based on the appellant's conduct before the district and bankruptcy courts. Rule 38 provides that sanctions are appropriate when the "*appeal* is frivolous."[45] Assuming there may be instances in which an appellant's actions below are within Rule 38's grasp, there is no reason to extend that reach here. Both the district court and the bankruptcy court had ample authority to order sanctions. A bankruptcy court has discretion under 11 U.S.C. § 303(i)(1) to grant costs and attorneys' fees when it dismisses an involuntary bankruptcy petition without the consent of all of the parties, and § 303(i)(2) allows the court to order proximate and punitive damages if it finds that the petitioner acted in bad faith.[46] The district court may order sanctions under Federal Rule of Civil Procedure 11.[47]

With regard to the appeal, CULS's contentions, while not ultimately meritorious, were not entirely unreasonable. The weight of authority did not foreclose room for some disagreement between this court and both the district and bankruptcy courts. Accordingly, Green Hills's motion for sanctions is denied.

\* \* \*

The district court's order affirming the bankruptcy court's dismissal is AFFIRMED. CULS's motion for judicial notice is GRANTED. Green Hills's motion for sanctions is DENIED.

---

[45] Fed. R. App. P. 38 (emphasis added).

[46] 11 U.S.C. § 303(i).

[47] Fed. R. Civ. P. 11(c).