# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2022

Lyle W. Cayce
Clerk

No. 21-40371

Sentry Select Insurance Company,

*Plaintiff—Appellee*,

*versus*

Home State County Mutual Insurance Company; Snap
Insurance Service, L.L.C.,

*Defendants—Appellees*,

*versus*

Juan Antonio Ortiz Ramirez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CV-16

Before Smith, Costa, and Wilson, *Circuit Judges*.

Per Curiam:*

This is an insurance coverage dispute arising out of a single-car automobile accident.  Juan Antonio Ortiz Ramirez appeals from a judgment declaring that Sentry Select Insurance Company owes him neither defense nor indemnity in an underlying state action.  The district court held that the "step down" provision in Sentry's policy precluded coverage because Ramirez was already covered up to the minimum liability limits required by Texas law under a policy issued to his sister, Zusuky Ortiz, by Home State County Mutual Insurance Company.  We find no error in the district court's analysis and therefore affirm.

## I.

## A.

On August 11, 2016, Ortiz entered a contract with Clark Knapp Honda in Pharr, Texas for the purchase of a Kia Forte.  Ortiz paid $500 up front and agreed to finance the remaining $16,096.32.  As part of the transaction, Ortiz agreed to provide proof of insurance coverage on the vehicle to Clark Knapp within 30 days.  She also "agree[d] to assume forthwith any and all responsibility for damage to the vehicle or resulting from the use, maintenance or operation of the vehicle," as well as "to hold [Clark Knapp] free of any loss, claim, or liability resulting from any damage to the vehicle or from the vehicle's use, maintenance or operation."

There was one catch to the deal: the Kia was undergoing repairs, so Clark Knapp lent Ortiz a Hyundai Elantra to drive until her Kia was ready.  In the interim, on August 13, 2016, Ortiz paid an initial $260.18 premium for a personal auto liability insurance policy issued by Home State and administered by Snap Insurance Service, LLC.  The policy's "Declarations

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Page" listed Ortiz as the named insured and the Kia as the insured vehicle. The policy provided the minimum amounts of motor vehicle liability insurance required under Texas law: bodily injury liability coverage up to $30,000 per person and $60,000 per accident, and property damage liability coverage up to $25,000 per accident. The same day she obtained the policy, Ortiz returned to Clark Knapp and provided proof of insurance. She left there driving the loaner Hyundai because the Kia was still undergoing repairs.

Under the policy's terms, Home State was obligated to "pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." A "covered person" included the named insured—Ortiz—and "any person using [the named insured's] covered auto." And a "covered auto" encompassed "[a]ny vehicle shown in the Declarations"—the Kia—and "[a]ny auto or trailer [the named insured] do[es] not own while used as a *temporary substitute* for [a covered auto] which is out of normal use because of its (a) breakdown; (b) repair; (c) servicing; (d) loss; or (e) destruction."

The next day, August 14, 2016, Ortiz's brother Ramirez wrecked the Hyundai in a single-car accident. Ortiz and her other brother, Sky Drem Ortiz, were passengers and sustained injuries in the crash.

Ortiz and Sky filed suit against Clark Knapp and Ramirez in state court in Hidalgo County, Texas, seeking relief under several negligence theories. Sentry, Clark Knapp's insurer, provided Ramirez a defense in the state lawsuit under reservation of rights. Sentry's policy provided Clark Knapp primary, excess, and umbrella liability coverage. Relevant here, the primary auto liability section contained a "step down" provision, which limited Sentry's coverage obligation to "the amount needed to comply with [Texas's] minimum limits after . . . other insurance is exhausted."

No. 21-40371

## B.

In January 2020, Sentry filed this action in federal court against Home State, Snap, Ramirez, and Ortiz, seeking a declaratory judgment that Sentry had no duty to defend or indemnify Ramirez in the underlying state lawsuit. Sentry alleged that Ramirez was not an "insured" under Sentry's policy covering Clark Knapp and that, even if he was, the policy's step down provision precluded coverage because Ramirez was already insured up to the minimum liability limits required by Texas law under Ortiz's Home State policy. In response, Ramirez filed a counterclaim seeking a competing declaration that he was entitled to a defense and indemnity under Sentry's policy.

Sentry moved for summary judgment on its own claims, as well as on Ramirez's counterclaim. Sentry boiled the case down to one issue: Ramirez's coverage under the Home State policy. Sentry asserted that the Hyundai constituted a "covered auto" under the Home State policy because the vehicle was a "temporary substitute" for Ortiz's Kia, "which [was] out of normal use because of its (a) breakdown; (b) repair; [or] (c) servicing . . . ." And because the Hyundai constituted a covered auto, Ramirez qualified as a "covered person," that is, a "person using [the named insured's] covered auto."

Home State, Snap, and Ramirez responded to Sentry's motion, asserting, *inter alia*, that because "Ortiz never took possession of the Kia and never completed the purchase process, she failed to obtain an insurable interest in the vehicle." They reasoned that there was thus no covered auto for which the Hyundai could have served as a temporary substitute. Home

State and Snap also filed a cross-motion for summary judgment on Sentry's claim for declaratory relief.[1]

The district court determined that, under a plain reading of the Home State policy, "the Hyundai constitute[d] a 'temporary substitute' . . . and Ramirez qualifie[d] as a 'covered person' by virtue of his use of that vehicle on the date of the accident." The court rejected the defendants' argument that Ortiz never acquired an insurable interest in the Kia. Instead, the court found Ortiz's assumption of liability for the Kia's "use, maintenance or operation" sufficient to establish "an insurable interest in the Kia at the relevant time, and therefore to keep Ramirez's use of the temporary substitute vehicle within coverage." In sum, the court determined that Ramirez was covered under Ortiz's policy with Home State, and the step down provision in Sentry's policy relieved Sentry of any duty to defend or indemnify Ramirez in the underlying state action.

After rejecting the defendants' additional arguments, the district court entered a final judgment granting Sentry's motion for summary judgment, denying Home State and Snap's cross-motion, and dismissing Ramirez's counterclaim.[2] Ramirez appealed, and Sentry filed a motion to

---

[1] On July 6, 2020, months after Sentry filed this action, Home State filed its own action against Ortiz and Ramirez in Texas state court seeking a declaration that it had no duty to defend or indemnify them in the underlying state lawsuit. Ortiz and Ramirez failed to appear, and Home State obtained a default judgment against them. As part of its cross-motion for summary judgment in this case, Home State asserted that the state court default judgment precluded coverage. The district court rejected this argument and as noted *infra* n.2, Home State did not appeal that ruling. Ramirez likewise does not challenge it on appeal.

[2] Home State, Snap, and Ramirez asserted that a genuine dispute existed as to whether the Home State policy was void due to Ortiz's failure to obtain a valid driver's license; that Home State's state court default judgment precluded a finding that the Home State policy afforded coverage; and that Ramirez was entitled to umbrella coverage under the Sentry policy. Home State and Snap did not appeal the district court's judgment, and

dismiss the appeal as frivolous and for sanctions under Federal Rule of Appellate Procedure 38. A panel of this court ordered the motion be carried with the case.

## II.

## A.

"This court reviews a grant of summary judgment de novo, applying the same standard as the district court." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As this is a diversity case, "we apply state substantive law and federal procedural rules." *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).

Ramirez's sole argument on appeal is that the district court erred by determining that Ortiz had an insurable interest in the Kia that gave rise to coverage under the Home State policy. Under Texas law, the general rule is that "liability insurance, like other forms of insurance, must be supported by an insurable interest in the insured." *Gulf Ins. Co. v. Winn*, 545 S.W.2d 526, 527 (Tex. Civ. App.—San Antonio 1976, writ ref'd n.r.e.). Texas courts have made clear, however, that unless the policy requires it, actual ownership is not necessary to establish an insurable interest in the subject vehicle. *See Snyder v. Allstate Ins. Co.*, 485 S.W.2d 769, 772 (Tex. 1972); *Winn*, 545 S.W.2d at 527.

In *Winn*, the insurer argued that the policy holder lacked an insurable interest because the vehicle named in the policy turned out to have been

---

Ramirez does not raise these issues on appeal, so they are abandoned. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

stolen. 545 S.W.2d at 527. In rejecting that argument, the Texas Court of Civil Appeals held that "the only interest necessary to the validity of an automobile liability policy is that the insured may incur liability because of the operation, maintenance, or use of the automobile." *Id.* at 528. Because the named insured "was in possession of the [vehicle] and planned to operate it on the public roads," the court found he was "confronted with the obvious possibility that [the] vehicle might be involved in a collision and subject him to potential civil liability." *Id.* This sufficed to establish that the policy holder "had sufficient insurable interest in the [vehicle] to procure liability insurance coverage on it." *Id.*

*Winn* dictates the same result here. Ortiz entered into a written agreement with Clark Knapp for the purchase of the Kia. Pursuant to that contract, Ortiz made a down payment and obtained insurance. She also agreed to "assume forthwith any and all responsibility for damage to the vehicle or resulting from the use, maintenance or operation of the vehicle," as well as "to hold [Clark Knapp] free of any loss, claim, or liability resulting from any damage to the vehicle or from the vehicle's use, maintenance or operation." Because Ortiz was subject to potential liability for the Kia's "use, maintenance or operation," she "had a sufficient insurable interest in the [Kia] to insure it with liability coverage." *Winn*, 545 S.W.2d at 528.

Ramirez contends that *Winn* is distinguishable because unlike the insured in *Winn*, Ortiz had neither possession nor control of the Kia at the time of the accident. He cites *Gulf Ins. Co. v. Bobo*, 595 S.W.2d 847 (Tex. 1980), for the proposition that no insurable interest exists where the insured lacks both possession and control. Because Ortiz had neither, Ramirez maintains that Ortiz never obtained an insurable interest in the Kia, and consequently, "the Home State policy never insured a vehicle for which the Hyundai could serve as a substitute."

*Bobo* involved an informal sale; there, the seller agreed to sell his truck, provided the buyer "would get some insurance on [it]." 595 S.W.2d at 848. The buyer showed the seller a receipt for collision insurance and subsequently took possession of the truck. *Id.* Before the parties could otherwise formalize the sale, the buyer wrecked the truck in an accident that injured the plaintiffs, who sought to recover against the buyer as a permissive user under the seller's policy. *Id.* The Texas Supreme Court held that after the buyer agreed to the terms of the sale, provided proof of insurance, and took possession of the truck, "he had the sole right to control the use of the vehicle, and it was up to him, and no one else, to grant or deny permission to drive [it]." *Id.* Because the seller "had neither the right nor the power to control [the buyer's] use of the [vehicle]," the buyer could not qualify as a permissive user under the seller's policy. *See id.* at 848–49.

Ramirez's reliance on *Bobo* fails in at least two respects. First, unlike the seller in *Bobo*, at the time of the accident here, Ortiz had at least "the right," if not "the power[,] to control" the Kia. *Cf. id.* at 849. Though she lacked physical possession of the vehicle, Ortiz had an enforceable contract with Clark Knapp to purchase the car, and she had fulfilled her side of the bargain. Specifically, she paid a down payment, agreed to pay the balance over 72 months, secured insurance, and provided Clark Knapp proof of her Home State policy. Clark Knapp was bound to deliver the Kia once repairs were complete, and Ortiz had the contractual right to force Clark Knapp to do so—which is why it lent Ortiz the Hyundai to drive in the meantime. Put differently, Ortiz had the "right to control the use of the [Kia]," *id.* at 848, and but for the fact that it was still in the shop, she would have had "the power to control [Ramirez's] use of the [vehicle]" on the date of the accident, *id.* at 848–49, power she exercised with regard to the loaner Hyundai. If anything, Ortiz was more like the *buyer* in *Bobo* than the seller.

8

No. 21-40371

Second, *Bobo* did not confront a situation in which a named insured, though not in possession of the vehicle, was nonetheless contractually liable for its "use, maintenance or operation." Applying *Winn*, which *Bobo* did not purport to overrule, Ortiz's assumption of liability under the contract to purchase the Kia generated an interest in the Kia sufficient to insure the vehicle. *See Winn*, 545 S.W.2d at 528. Because Ortiz had an insurable interest in the Kia, the Hyundai was also a "covered auto," Ramirez was a "covered person," and the step down provision in Sentry's policy relieved Sentry of any obligation to provide coverage. Summary judgment in favor of Sentry was thus warranted.

## B.

The merits thus addressed, Sentry seeks an award of $7,305 in attorney's fees under Federal Rule of Appellate Procedure 38 "for having to respond to [Ramirez's] frivolous appeal." Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "An appeal is frivolous if the result is obvious or the arguments of error are wholly without merit." *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988). "This standard is rarely met, and we generally only order sanctions when the 'great weight of the authority . . . [is] clearly on point and [does] not favor the [sanctioned party].'" *In re Green Hills Dev. Co., LLC*, 741 F.3d 651, 660 (5th Cir. 2014) (quoting *Stevenson v. E.I. DuPont De Nemours & Co.*, 327 F.3d 400, 410 (5th Cir. 2003)).

Sentry contends that Ramirez's appeal is frivolous because "[h]e cites no legal authority whatsoever" for his assertion that the district court erred in granting summary judgment. But that is inaccurate. As noted *supra*, Ramirez cites *Bobo* to support his argument that Ortiz never obtained an

9

No. 21-40371

insurable interest in the Kia and distinguishes *Winn* from the present case. Though ultimately unsuccessful, Ramirez's attempts to analogize and distinguish the few relevant Texas cases "were not entirely unreasonable." *Green Hills*, 741 F.3d at 661. We have denied Rule 38 sanctions where appellants "faced long[er] odds," *see, e.g.*, *16 Front St., LLC v. Miss. Silicon, LLC*, 886 F.3d 549, 561 (5th Cir. 2018), and decline to exercise our discretion to grant them here.

## III.

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of Sentry. We DENY Sentry's motion for sanctions. Sentry's motion to dismiss the appeal is DENIED AS MOOT.

AFFIRMED.